JAMES C. FARGO, PRES'T MERCH. DESP. TRANS. CO. v. AUDITOR GENERAL OF THE STATE OF MICHIGAN.

*Taxation of freight business—Inter-state commerce.*

1. A corporation, other than a railroad company paying taxes on its gross receipts, whose business it is to own or possess railroad freight cars, which are used and run by railroad companies in Michigan, organized under its laws, in whose possession they chanced to be from time to time for transporting freight from points within to points without, and from points without to points within, the State, and paying for the use thereof a definite sum per mile for the distance traveled over their respective lines, is subject to be taxed under Act No. 152 of 1883, entitled "An Act to provide for the taxation of persons, copartnerships, associations, car-loaning companies, corporations, and fast freight lines engaged in the business of running cars over any of the railroads of this State, and not being exclusively the property of any railroad company paying taxes on their gross receipts."

2. The business so conducted is within the title of the Act.

3. The tax imposed by the Act is upon the business, and affects residents and non-residents alike.

4. The enactment is a valid exercise of legislative power, and is not in conflict with article 1, sec. 10, subd. 2, Const. U. S.

Appeal from Washtenaw. (Joslyn, J.) May 7–8.—Sept. 29.

INJUNCTION bill. Defendant appeals. Reversed.

*William H. Wells, Ashley Pond* and *O. G. Getzen-Danner* for complainant.

The *Attorney General* and *Edward Bacon* for defendant
appellant. Corporations and companies organized under the
laws of Michigan could be legally taxed as to their business,
and any discrimination in favor of a foreign company, which
would give it immunity, would be contrary to public policy:
*Talcott & Co. v. McCormick* 51 Mich. 7; *Diamond Match
Co. v. Powers* 51 Mich. 148; *Ducat v. Chicago* 10 Wall.
410; *Woodruff v. Parham* 8 Wall. 123; *Railroad Co. v.
Husen* 95 U. S. 465; *Thomson v. Pacific Railroad Co.* 9
Wal. 579; *Pacific Railroad Co. v. Peniston* 18 Wal. 5;
*Osborne v. Mobile* 16 Wal. 479; *Railroad Co. v. Fuller*
17 Wal. 560; *Telegraph Co. v. Texas* 105 U. S. 464;
*Webber v. Virginia* 103 U. S. 350; the apportionment
which Act 152 of 1883 requires so as to ascertain the
amount of gross receipts "earned within the limits of
this State," and the provisions in said Act for a tax of 2½ per
cent. on the amount so apportioned are not illegal, on the
ground that they are to tax property beyond the limits of the
State, or out of its power: *Walcott v. People* 17 Mich. 83;
*State Treasurer v. Auditor General* 46 Mich. 231-2-4; *Dela-
ware R.R. Tax* 18 Wal. 206; *Erie R. R. Co. v. Pennsylvania*
21 Wal. 496; *Railroad Co. v. Maine* 96 U. S. 499; *State R.
R. Tax Cases* 92 U. S. 611; *Reading R. R. Co. v. Penn.* 15
Wal. 232; *People v. Home Ins. Co.* 92 N. Y. 346; *People v.
Equitable Trust Co.* 96 N. Y. 394; there is nothing in the
Federal constitution as to inter-state commerce which ought
to destroy Act 152 of 1883; *Walcott v. People* 17 Mich. 83;
*Machine Co. v. Gage* 100 U. S. 676; public policy and the
police power of the State are sufficient to authorize a statute
not only to tax the business of an express company but to regu-
late its charges: *Newton v. Commissioner* 100 U. S. 548;
*Sinking Fund Cases* 99 U. S. 743; *Ruggles v. Illinois* 108 U.
S. 531; *Peik v. R. &c. Ry. Co.* 94 U. S. 165–178; *Chi. & M.
& St. P. Ry. &c. v. Ackley* 94 U. S. 179; *Rae v. Grand
Trunk Ry. Co.* 14 Fed. Rep. 401; *Spring Valley Water
Works v. Shotteler* 110 U. S. 354; *Reithmiller v. People* 44
Mich. 284.

CHAMPLIN, J. Complainant filed his bill for the purpose
of enjoining the collection of a tax upon a portion of the
gross earnings of the Merchants' Despatch Transportation
Company for the year 1883. The general demurrer to the
bill was overruled, and defendant appeals.

The bill of complaint sets forth that the Merchants'
Despatch Transportation Company is a joint-stock associa-

tion, consisting of more than seven members, organized and existing under the laws of the state of New York, and authorized to sue in the name of its president; that during the year ending December 31, 1883, the company was engaged in the business of soliciting and contracting for the transportation of freight required to be carried over connecting lines of railroad, in order to reach its destination, and for the prosecution of its said business it had agencies located generally throughout the United States and the dominion of Canada: it issued through bills of lading for such freight, and caused the same to be carried by the appropriate railroad companies, and, as compensation for its services in the premises, it was paid by the railroad companies a definite proportion of the through rate charged and collected by said companies for the carriage of said freights; that during said year it was possessed of certain freight cars, which were used and run by the railroad companies in whose possession they chanced to be from time to time for the transportation upon their own and connecting lines of railroad, of through freight, principally between New York, Boston and commercial centers in the West, Northwest and Southwest, without the State of Michigan; that said cars were not used for carriage of freight between points situate within the State of Michigan, but wholly for the transportation of freight either passing through the State, or originating at points without the State, and destined to points within, or originating at points within, and destined to points without, the State; that the railroad companies thus making use of cars during the year paid to the transportation company, as compensation therefor, a definite sum per mile for the distance traveled by the said cars over their respective lines; that the transportation company, during the year, was not running or interested in any special fast, through, or other stock, coal or refrigerator car freight line, or doing business in, or running cars over, any of the railroads of said State otherwise than as before stated; that prior to April 1, 1884, the Commissioner of Railroads furnished certain blank forms of a report to the company, under the Act of June 5, 1883, entitled "An Act to

provide for the taxation of persons, copartnerships, associa-
tions, car-loaning companies, and fast freight lines engaged
in the business of running cars over any of the railroads of
this State, and not being exclusively the property of any
railroad company paying taxes on their gross receipts," with
the requirement that it should make up and return said
report to the office of said Commissioner on or before April
1, 1884, under the penalties of said act; that, protesting
against the validity of said law, or its applicability to said
company, it made and filed with the Commissioner a report,
duly verified, of the gross amount of the receipts of the said
transportation company for the mileage of said cars during
the year 1883, while in use in the transportation of freight
between points without said State, and passing through it in
transit, [which] estimated and pro-rated according to the mile-
age of said cars within the State while so in use, was the sum
of $95,714.50; and while in the use of transportation of
freight from points without to points within, and from
points within to points without, said State, estimated and
pro-rated according to the mileage of said cars within the
State of Michigan while so in use, was $28,890.01, making,
in the aggregate, the sum of $124,604.51; that during said
year it received no money whatever on business done solely
within the State, and no money which was or could be
regarded as earned during said year within the limits of the
State, other than as hereinbefore set forth; that the law
makes it the duty of the Commissioner to make and file with
the Auditor General a computation, based on the report, of
the amount of tax to become due, and the company is
required, before the first day of July, to pay to the State
Treasurer, upon the statement of the Auditor General, $2\frac{1}{2}$
per cent. upon its gross receipts, as computed by the Com-
missioner, and derived from loaning, renting or hiring of
cars to any railroad corporation; the tax and interest is made
a lien upon all the property of the company, and in default
of payment the Auditor General may issue his warrant and
collect the same by distress and sale of any property of the
company; that the Commissioner determined that the gross

receipts of the transportation company under the Act is $28,890.01, and that there is due, as a tax thereon, $722.25, for which the property of the company is liable to seizure and sale ; that the company is advised that said Act as to the gross receipts of the company, or any of its receipts or earnings from use of its cars within the State of Michigan, and the transaction of its business aforesaid, is in violation of the Constitution of the United States and void, and that said Act is inapplicable to said transportation company, and inoperative, for further reasons appearing on its face, and that said company is not amenable thereto ; that the chief office for the transaction of corporate business was and is in the city of New York, and that all moneys earned by it were paid to it at its said office ; that it had no funds or property in the State of Michigan, except cars in transit and office furniture in possession of agents ; and that during said year the said transportation company was subject to taxation, and was taxed on account of its property and earnings, within and under the laws of the state of New York; that its business is permanently established, and the enforcement of such tax would deprive it of rights and privileges conferred upon it by the Constitution of the United States.

The prayer of the bill is that the said tax upon the said gross receipts of complainant may be decreed to be invalid ; and that any tax upon the earnings or receipts of said transportation company, from the soliciting of freights and the making of contracts for the through transportation of the same, and from the use of its cars in manner aforesaid, may be decreed to be unauthorized by said act; and that the Auditor General may be restrained from collecting or enforcing, or proceeding to collect and enforce, the said tax upon the receipts of the said transportation company, or any part thereof.

It will be perceived, from the statement made in the bill, that the only tax which the Auditor General has laid under the act against the complainant is upon the gross earnings of its cars, computed upon the mileage of said cars used in transportation of freight from points without the State to

points within, and from points within to points without the State; and that he has not attempted to lay any tax upon the gross receipts received for mileage of its cars used in transporting freight through the State, nor upon its business of soliciting and contracting for freight either into, through, or without the State.

The sections of the act necessary to be considered in the disposition of the case read as follows:

"An act to provide for the taxation of persons, copartnerships, associations, car-loaning companies, corporations, and fast-freight lines engaged in the business of running cars over any of the railroads of this State, and not being exclusively the property of any railroad company paying taxes on their gross receipts.

"Section 1. *The People of the State of Michigan enact*, That every person, copartnership, corporation, association, car-loaning company or fast-freight line engaged in the business of running cars over any of the railroads this State, and not being exclusively the property of any railroad company paying taxes in this State, on their gross receipts, who are or may hereafter be engaged in the business of carrying passengers in any palace, drawing-room, sleeping, chair, or other car over or upon any railroad in this State, or any part thereof, for the right of occupancy of which passengers are required to pay a sum additional to that charged upon the ordinary cars of the road over which said palace, drawing-room, sleeping, chair, or other car as aforesaid may be hauled, shall keep, in such manner as shall be prescribed by the Commissioner of Railroads, a just and true account of all sums so received by them as additional charges for the occupancy of such cars over any road or portion thereof, within the limits of this State, and shall, on or before the first day of April of each year, report to said Commissioner of Railroads, on blanks to be furnished by him for such purpose, the gross amount of such receipts as aforesaid, earned within the limits of this State, for the year ending on the thirty-first day of December next preceding the date of such report.

"Sec. 2. Every person, association, copartnership, or corporation owning running or interested in any special, fast, through, or other stock, coal, or refrigerator car freight lines, the cars of which are not the exclusive property of railroad companies, also any car-loaning company, incorpo-

ration, copartnership, or association doing business in or running cars over any of the railroads of this State,—shall keep accounts and make reports in like manner as is provided for in the case of palace, drawing-room, and other passenger cars by the first section of this act.

"Sec. 3. The reports required to be made, by sections one and two of this act, shall be verified, in the case of corporations, by the oath of the president and secretary thereof, and in the case of copartnerships, associations, or persons, by the oath of their proper agents or accountants, as the Commissioner of Railroads shall require.

"Sec. 4. The Commissioner of Railroads shall, on or before the first day of June of each year, make and file with the Auditor General a computation of the amount of tax which will become due on the first day of July next succeeding, from each person, association, copartnership, or corporation. liable to pay taxes under the provisions of section five of this act, which computation shall be based upon the report of such person, association, copartnership, or corporation, required to be made by the provisions of sections one and two of this act, and any such person, association, copartnership, or corporation neglecting or refusing to make such report, or who shall willfully make a false report, shall be liable to a penalty of one thousand dollars, and it shall be the duty of the Auditor General and he is hereby required, in case such penalty shall be incurred as aforesaid, to forthwith issue his warrant for the collection of the same, in the same manner, and to levy and collect the same in all respects as is herein provided for the collection of taxes against such person, association, copartnership, or corporation, and the collection of said penalty shall in no wise absolve the person, association, copartnership, or corporation, from making the report or payment of the taxes as herein provided.

"Sec. 5. Every corporation, association, copartnership, car-loaning company, or person as specified in sections one and two of this act, shall, on or before the first day of July in each year, pay to the State Treasurer, upon the statement of the Auditor General, an annual tax of two and one half per cent. upon their gross receipts as computed by the Commissioner of Railroads, and derived from passengers or from the loaning, renting, or hiring these cars to any railroad or other corporation, association, copartnership, or party, and such taxes shall be in lieu of all other taxes upon the cars used for the purposes mentioned in sections one and two of this act."

It is claimed that the bill can be maintained upon two grounds: (1) The Merchants' Despatch Transportation Company is not amenable to the Act. (2) The tax is invalid, because there was no subject for lawful taxation within the State.

Under the first point it is urged that the Act cannot be broader than its title, and if the title does not comprehend the company, the tax in question laid under its authority is void; that the Act by its titles reaches companies "engaged in the business of running cars over any of the railroads of this State;" and that this company furnishes cars to other companies which were engaged in the business of running cars, but itself was not engaged in that business. The case stated by the bill, however, is that this company was possessed of certain freight cars which were used and run by the railroad companies in whose possession they chanced from time to time to be, and that the several railroad companies thus making use of said cars during the year paid to the said transportation company, as compensation therefor, a definite sum per mile for the distance traveled by the said cars over the respective lines. This method of doing business with the freight cars possessed by the complainant brings them within the class named in the title called "Car-loaning Companies," and also within the description of associations engaged in the business of running cars over any of the railroads of this State; and I have no doubt that complainant's business is comprehended in the title of the Act.

Under the second point the complainant's counsel claim that the tax in question is laid, either on the company by reason of business done within the State, measured by its gross earnings, or upon the gross earnings of the company within the State as specific property; that the tax in either case is void, (1) because the business of the company is inter-state transportation; and (2) because the earnings or assets are not within the jurisdiction of the State. And it is contended that the application of the Act above recited to the Merchants' Despatch Transportation Company is enjoined by the Federal Constitution, which gives to Congress exclusive power to regulate commerce among the states. Art. 1, section 8, subd. 3.

The points raised by counsel for complainant have frequently been the subject of discussion by eminent jurists, and in different phases have been before the Supreme Court of the United States for final determination.    I shall not attempt a discussion of the cases.

The difficulty of drawing the line between constitutional and unconstitutional taxation by state authority has been recognized by that tribunal.    It was held in the case of *State Tax on Railway Gross Receipts* 15 Wall. 284, that a statute of a state imposing a tax upon the gross receipts of the railroad corporation was not repugnant to the clause of the Constitution above cited.    But counsel for complainant insist that the decision in that case is not authority for a like holding in this, because the corporations upon which the tax was laid were home corporations, and subject to the control of the state which enacted the law, and also because the reasoning of the court in sustaining the tax proceeded upon the ground that they were domestic corporations, and held their franchises under authority of the state imposing the tax, and it was competent for the legislature to adopt this mode of exacting an excise tax from its corporations.    But the point decided was that such a tax was not invalid because in conflict with the power of Congress to regulate commerce among the states.    The law under which the present tax is exacted makes no distinction between domestic and foreign corporations, and applies to all persons and associations doing business in the State.    It is a tax upon business done in the State, and the fact that the complainant is a non-resident doing business in the State is the mere accident of place.    Indeed, if the law made a distinction against non-residents, it might be invalid for that reason.    The objections to the validity of the law on the ground urged by the complainant would be equally potent if taken by a resident of the State. It is general in its application.

Following the case last cited is that of *Osborne v. Mobile* 16 Wall. 479, in which the court held that a tax in the shape of a license fee imposed upon an express company, which was a foreign corporation, having a business extending beyond

the limits of the state, was not repugnant to the provision of the Constitution under consideration. The chief justice, in giving the opinion of the court, expressed himself as follows: "The license tax in the present case was upon a business carried on within the city of Mobile. The business licensed included transportation beyond the limits of the state, or rather the making of contracts, within the state, for such transportation beyond it. It was with reference to this feature of the business that the tax was, in part, imposed; but it was no more a tax upon inter-state commerce than a general tax on drayage would be because the licensed drayman might sometimes be employed in hauling goods to vessels to be transported beyond the limits of the state."

I think the tax in question is within the conceded authority of the State to tax persons, property, business or occupations within its limits; and that, within the principles of the cases above cited, the tax imposed is a valid exercise of such authority. The decree of the circuit court must be

Reversed, and the bill dismissed.

CAMPBELL and SHERWOOD, JJ. concurred.

COOLEY, C. J. did not sit in this case.