In re MINOR.

(Circuit Court, D. West Virginia. July 10, 1895.)

CIGARETTES—LICENSE TO SELL—INTERSTATE COMMERCE—POLICE REGULATION.
Act W. Va. Feb. 21, 1895, amending and re-enacting Code, c. 32, § 66, so as to provide that a certain license fee shall be paid for selling cigarettes at retail, so far as it applies to cigarettes imported from another state and sold by the importer in West Virginia in the original package, and to cigarettes manufactured in another state and by the manufacturer sent into West Virginia in the original package, for sale by the agent of the manufacturer, and so sold in such package by such agent, is not an exercise of the police power of the state, but a regulation of interstate commerce, and therefore void.

Petition by Frank A. Minor for writ of habeas corpus.

W. W. Fuller, for petitioner.

U. S. G. Pitzer, for the State.

GOFF, Circuit Judge. The petitioner, Frank A. Minor, claims that he is illegally deprived of his liberty, and prays that he may be discharged from custody. The facts, as agreed by counsel, are as follows: The petitioner, a citizen of the United States, residing at Martinsburg, in the state of West Virginia, has been for some years past engaged in the business of selling, in said city, cigarettes at retail. On the 21st day of February, 1895, the legislature of the state of West Virginia passed an act entitled "An act to amend and re-enact sections one, two, sixty-six and eighty-four of chapter thirty-two of the Code," which act requires license fees or taxes to be paid for carrying on the different trades, acts, and occupations mentioned therein. Section 66 of said act, so amended, is as follows: "On every license to sell at retail, domestic wines, ale, beer, or drinks of like nature, one hundred dollars, or to sell at retail cigarettes or cigarette paper, five hundred dollars." On the 23d day of May, 1895, petitioner purchased in the state of New York, from the American Tobacco Company, a corporation organized under the laws of the state of New Jersey, and doing business in the city and state of New York, 50 packages, each containing 10 cigarettes, and directed that the same be shipped to him at Martinsburg, in the state of West Virginia. The cigarettes so purchased were manufactured by said company at its factory in New York, and packed by it, in said factory, in pasteboard boxes, each box containing 10 cigarettes. Upon each of said packages was printed the name of the manufacturer, the brand of the cigarettes contained therein, the number of the internal revenue collection district, and the name of the state where the factory was located, the number of

cigarettes contained in the box, the caution notice required by the laws of the United States, and all the other requirements of the laws and regulations of the United States relating thereto, and, also, to each box was attached the internal revenue stamp required for 10 cigarettes. The said company shipped said cigarettes to the petitioner at Martinsburg, from its factory in New York, in the original packages, without case or covering of any kind about any of the packages, each being loose and separate from every other, and petitioner so received them, and offered them for sale at his place of business in Martinsburg, from which he on the 23d day of May, 1895, sold one of such packages to L. D. Gearhardt. The said American Tobacco Company, also, on the 23d day of May, 1895, shipped from its factory in New York to the petitioner in Martinsburg, at his request, on consignment to be sold at retail by him, as the agent of said company, 50 boxes or packages, each containing 10 cigarettes, which had been manufactured at such factory in New York, and so packed therein as before mentioned. The cigarettes so shipped on consignment were received by petitioner at Martinsburg, exposed to sale by him in said city, and one package sold by him as such agent, on said 23d day of May, to said customer Gearhardt. The cigarettes so sold by petitioner—those owned by him and those held by him as the agent of said company—were sold in the original packages as received from the factory in New York. The petitioner had no state license to sell cigarettes at retail, nor had he paid or tendered any fee or tax for such license. On the 23d day of May, 1895, petitioner was, upon complaint of said Gearhardt, on a warrant issued thereon by P. R. Harrison, a justice, arrested by one William M. Hollis, the officer to whom said warrant was directed, and by him taken before said justice, by whose direction said petitioner is held in custody, charged with the violation of said section 66, in so making sale of said two packages of cigarettes. On due application the writ of habeas corpus was issued, to which proper return has been made, the body of the petitioner produced in court, and full argument submitted on the questions involved.

It is insisted that Minor is unlawfully detained in custody by said officers, because that the said act of the legislature of the state of West Virginia under which he was arrested and is now held is, so far as it applies to the sales of the cigarettes so made by him, in violation of clause 3 of section 8 of article 1 of the constitution of the United States; and that it, so far as said sales are concerned, is in contravention of clause 2 of section 10 of article 1 of said constitution; and that said legislation, so far as it concerns the business of selling and dealing in cigarettes in the original packages as imported by him into the state of West Virginia from another state, is unconstitutional and void. The questions raised by the petition and return thereto, so fully and ably discussed by counsel, and now to be disposed of by the court, while of great interest and importance, are not new, and their disposition has been plainly indicated by the decisions of the supreme court of the United States, in cases involving transactions similar in character to those now presented.

From the earliest cases on this subject to those recently decided it has been held that legislation by the states of the Union, relating to the regulation of commerce, is not allowable, and that where a uniform system is necessary between the states the congress of the United States has the exclusive power to regulate it. Interstate commerce, being the purchase, exchange, transportation, and sale of commodities in and between the different states, is national in character, and can only be carried on successfully when conducted by and under a uniform system of laws and regulations. The power of the congress over such commerce is as complete as it is over foreign commerce. Where congress has not legislated concerning a particular subject-matter of interstate commerce, or has not authorized the states to do so, it thereby indicates that its intention is that such commerce shall be free, untrammeled by either federal or state laws. This subject was again fully discussed and explained in the case of Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, in which the case of Peirce v. New Hampshire, 5 How. 504, theretofore cited to the contrary of the opinion then announced, was expressly overruled. The rule now well established is clearly stated by Mr. Justice Field in Bowman v. Railway Co., 125 U. S. 465, 507, 8 Sup. Ct. 689, 1062, in these words: "Where the subject upon which congress can act under its commercial power is local in its nature or sphere of operation, such as harbor pilotage, the improvement of harbors, the establishment of beacons and buoys to guide vessels in and out of port, the construction of bridges over navigable rivers, the erection of wharves, piers, and docks, and the like, which can be properly regulated only by special provisions adapted to their localities, the state can act until congress interferes and supersedes its authority; but where the subject is national in its character, and admits and requires uniformity of regulation, affecting alike all the states, such as transportation between the states, including the importation of goods from one state into another, congress can alone act upon it and provide the needed regulations." It follows that if congress has not legislated on any special subject relating to commerce, and the enactments of a state regarding the same are questioned, the only matter to be determined by the courts is, does the state legislation complained of amount to a regulation of commerce? If so, it is unconstitutional and void. This result is clearly demonstrated by the following cases: Cooley v. Board, 12 How. 299; State Freight Tax Case, 15 Wall. 232; Welton v. Missouri, 91 U. S. 275; Henderson v. Mayor, 92 U. S. 259; Railroad Co. v. Husen, 95 U. S. 465; Cook v. Pennsylvania, 97 U. S. 566; Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592; Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725. That the power of congress over the entire subject of interstate commerce is supreme and exclusive is now without question, and, so far as that matter is concerned, state lines are obliterated and state laws inoperative. The reason for this is evident, and its imperative necessity was shown by the condition of affairs relating to commerce, existing when the convention that framed the constitution of the United States assembled, as all familiar with our history well know.

The argument submitted by counsel for the state, that the legislation by virtue of which petitioner was arrested is but the proper exercise by the state of its police power, is, I think, without merit. That which does not belong to commerce may be regulated by the state under its police power, but that which does belong to commerce falls within the exclusive control of the United States. This act of the West Virginia legislature inhibits the sale by the petitioner (unless he first pays a tax for the privilege so to do) of the original packages of cigarettes imported by him into the state of West Virginia from the state of New York, while they are still articles of commerce, and this demonstrates, by the authorities I have referred to, that it is not a proper use of the police power. The right to purchase in one state carries with it the right to sell the article, so purchased, in another state, regardless of state laws, and independent of local interests and jealousies. Were this not so, the commerce between the states could be, and in many instances would be, entirely destroyed. It is only by the sale of the imported article that it becomes mingled with the other property within the state. The right of the state to enact police laws is not questioned, has always been conceded, and the necessity for the same is apparent. The police power extends to such legislation as is required to protect the comfort, health, and lives of all persons within the jurisdiction of the state, and also to care for the property located within the same. It justifies the adoption of regulations to prevent the commission of crime, and the spreading of disease. It authorizes rules for the suppression of vice and of the various kinds of social evils, for the prohibition of lotteries, gambling, and nuisances. Whatever this power may include, I think it is clear that it does not embrace a subject confided by the constitution exclusively to congress. Railroad Co. v. Husen, 95 U. S. 465; Passenger Cases, 7 How. 283; Henderson v. Mayor, 92 U. S. 259; Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851.

The suggestion that it was the intention of the legislature to restrict the sale of cigarettes within the state of West Virginia is foreign to the case before me. The state makes no effort to prevent the importation or to prohibit the sale of cigarettes; on the contrary, it invites the one and protects the other, claiming from those who accept the privilege tendered the payment of revenue for its own purposes. If the congress should legislate concerning cigarettes as it has about liquors, in connection with the police laws of the states, and the legislature of West Virginia should then, regarding the use of cigarettes as injurious to the health of the citizens of the state, prohibit their sale within its limits, the question then presented would be in the line of the argument of counsel, and very different from the one I now consider. After the decision in Leisy v. Hardin, supra, in which a statute of the state of Iowa prohibiting the sale of intoxicating liquors except as provided therein was, as to a sale of liquors in the original packages by the importer, held to be inoperative, because in effect a regulation of commerce, the congress passed the act of August 8, 1890, by virtue of which all liquors imported into a state come within the provisions of the police laws

enacted by the state. But this legislation by congress applies only to liquors, and as to all other commodities the exclusive right of the United States to legislate concerning them in their relation to commerce is retained. It will be kept in mind that the state, by this legislation, is not taxing the property, imported by the petitioner, as it does other property within its limits, by a general and uniform tax rate, but that this tax is imposed for the privilege of selling the imported articles, and is, as to them, special and additional. A tax imposed on the assessed value of the cigarettes, after they have commingled with and become part of the common property within the state, would not be a regulation of commerce, and would not be subject to the objections alluded to; but a tax on a license to sell goods is simply a special tax on the goods so authorized to be sold. I reach the conclusion that said section 66, as amended in the act of the legislature of the state of West Virginia, passed February 21, 1895, entitled "An act to amend and re-enact sections one, two, sixty-six and eighty-four of chapter thirty-two of the Code," so far as it applies to cigarettes imported from another state into the state of West Virginia, and sold by the importer within said last-named state, in the original packages, is a burden upon commerce among the states, and to that extent in violation of the commercial clause of the constitution of the United States; and also that, so far as it relates to cigarettes manufactured in another state and by the manufacturer sent into West Virginia in the original packages, for sale by the agent of the manufacturer, and so sold in such packages by such agent, it is for the same reason inoperative and void.

It follows that petitioner must be discharged from the custody of the officers now detaining him, and it is so ordered.