In re MAY.

(Circuit Court, D. Montana. August 5, 1897.)

No. 472.

1. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—VALIDITY OF STATE LAWS.
    To render a state statute void on the ground that it affects commerce between the states, it must involve some discrimination against goods shipped from other states, or against persons engaged in such commerce.

2. SAME—SALES OF CIGARETTES—MONTANA LAW.
    Pol. Code Mont. § 4064, subd. 15, requires all persons engaged in selling cigarettes, whether on commission or otherwise, to take out a license and pay a quarterly license fee, and also a license fee of $10 a month. Pen. Code, § 780, renders the conducting of such a business without a license a misdemeanor, and section 19 imposes a penalty of fine or imprisonment. The applicant, residing and engaged in the business of selling cigarettes at Helena, Mont., purchased from the American Tobacco Company, in New York, a number of packages of cigarettes, which were accordingly shipped to and received by him; he also received from the company packages of cigarettes to be sold by him as its agent. The cigarettes were put up in small boxes, on each of which was an internal revenue stamp, and which were packed in a larger box for shipment. He was convicted of selling, without a license, one package of those bought by himself and one of those sent him for sale. On application for a writ of habeas corpus, held, that the statute above cited does not impede, restrict, or interfere with commerce among the states.

3. SAME—ORIGINAL PACKAGES.
    Where cigarettes put up in small boxes, bearing internal revenue stamps, are shipped from one state to another, the boxes constitute original packages; but when they reach their place of rest for final disposal, and are to remain there until sold to customers, they thereupon become a part of the mass of the property of the state.

4. FEDERAL AND STATE COURTS—HABEAS CORPUS.
    When it appears that the petitioner for a writ of habeas corpus is held under the judgment of a state court of competent jurisdiction, a federal court should not grant the writ unless the pivotal point has been finally decided by the supreme court, and the illegality of his detention is beyond question.

This was an application by Robert D. May for a writ of habeas corpus.

Elbert D. Weed, for petitioner.
C. B. Nolan, for respondent.

KNOWLES, District Judge. It appears from the statement of facts presented to the court, which facts are agreed to by Atty. Gen. Nolan appearing for the state of Montana, that the applicant, Robert D. May, is and was, at the time he was arrested for the offense hereinafter stated, and for a long time prior thereto had been, a citizen of

Montana and a resident therein; that on the 3d day of June, 1897, and for a long time prior thereto, he, the said May, was engaged in Helena, in said state, in the sale of cigarettes; that he purchased of the American Tobacco Company, in the state of New York, a number of packages of cigarettes, to be shipped to him to Helena, Mont., and that said cigarettes were so shipped and received by the petitioner at said point; that the American Tobacco Company shipped them from the city of New York to petitioner, to the city of Helena, Mont., to be sold by him as the agent of said company, and they were received by applicant as such agent; that the cigarettes were placed in boxes, the number of 10 in each box; that on each of these boxes an internal revenue stamp was placed; that these boxes were placed in a larger box for convenience of shipment; that the said cigarettes were exposed for sale by said May in his place of business at Helena, Mont., and on the 3d day of June, 1897, at said place of business, he sold one package of those purchased by himself in New York, and also one shipped to him, to be by him sold, as the agent of the said American Tobacco Company, to one George L. Cressap. On that date a complaint was filed before a justice of the peace named John Steinmetz, by said George L. Cressap, which is as follows, to wit:

"The State of Montana vs. Robert D. May.

"Personally appeared before me this day George L. Cressap, who, being first duly sworn, complains and says that one Robert D. May did, on the 3d day of June, A. D. 1897, at Lewis and Clarke county, state of Montana, with force and arms, wrongfully, willfully, and unlawfully carry on and transact the business of selling cigarettes at retail and as a retail dealer in cigarettes, for the transaction and carrying on of which said business a license is required and prescribed to be taken out and procured from the duly elected, qualified, and acting county treasurer of said Lewis and Clarke county by the laws of the state of Montana, to wit, subdivision fifteen (15) of section 4064 of the Political Code of the said state, without at said day having taken out or procured the said license so prescribed by law as aforesaid, and without at the time aforesaid being in the possession of said license so prescribed by law for the carrying on and transacting of the said business; all of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Montana. Said complainant, therefore, prays that a warrant may be issued for the arrest of the said Robert D. May, and that he may be dealt with according to law.                George L. Cressap.

"Subscribed and sworn to before me this 3d day of June, 1897.
                                        "John Steinmetz,
"Justice of the Peace, Helena Township, Lewis and Clarke County, Montana."

Upon this complaint the said May was arrested and tried, and found guilty of the offense therein charged, and fined one dollar and costs, and adjudged to stand committed to the custody of the constable of said Helena township until such fine and costs should be paid, and in accordance with such commitment is now in custody.

The statute under which the complaint in this case was made is as follows, to wit:

"Every person who at a fixed place of business sells any goods, wares or merchandise or distilled liquors, drugs or medicines, jewelry or wares or precious metals, whether on commission or otherwise, and all butchers, must obtain from the county treasurer in which the business is transacted, and for each branch of such business, a license, and pay quarterly therefor an amount of money to be determined by the class in which such person is placed

by the county treasurer; such business to be classified and regulated by the amount of the monthly average sales made or hiring done and at the rate following those who are estimated to make average monthly sales to the amount."

Then follows the several amounts of such monthly sales, and the license charged, commencing at $100,000 or more per month, for which a license of $75 per month must be paid, down to a business in which the sales amount to less than $400 per month, for which a license of $3 per month is required.

Division 15 of this section is as follows:

"Every person or persons who is engaged in the business of selling cigarettes, cigarette papers or material used in making cigarettes, except tobacco, shall pay a license of ten dollars per month in addition to any other license herein provided for."

See Pol. Code Mont. § 4064.

Section 780, Pen. Code Mont., provides that any one who conducts any business for which a license is required, without taking out a license therefor, shall be guilty of a misdemeanor.

Section 19, Pen. Code Mont., provides that when no definite punishment is provided, every offense declared to be a misdemeanor is punishable by imprisonment in a county jail not exceeding six months, or by a fine not exceeding $500.

Under the law defining the jurisdiction of justice of the peace courts, such a court had jurisdiction in Montana of such a misdemeanor as the one above named.

The applicant urges that the license required in this case is in contravention of that part of the constitution of the United States which gives congress control over interstate commerce; in other words, that this license interferes with such commerce or impedes it. It is claimed that the right to ship cigarettes from the state of New York to that of Montana carries with it the right to sell the same in Montana in original packages. There is no doubt but that this is the established doctrine of the federal courts. Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681. Under the authorities in the federal courts it is established that a box holding 10 cigarettes, having upon the same an internal revenue stamp, is an original package. In re Minor, 69 Fed. 233. In considering the facts presented in this case, we find that May "was on the 3d day of June, 1897, and for a long time prior thereto, engaged at Helena," in said state and district, in the sale of cigarettes. From this statement it is evident that the said May was engaged at Helena, Lewis and Clarke county, in the business of selling cigarettes. Said section 4064 of the Political Code of Montana, above referred to, provided a license for doing certain kinds of business. There is no discrimination against any business because it pertains to articles shipped from any other state or foreign country. The license for engaging in the business of selling cigarettes pertains to the same, whether the said cigarettes are manufactured in Montana or elsewhere. The complaint under which May was arrested, and tried and convicted, charges only that he, the said May, was conducting the business in said county and state of selling at retail cigarettes. The question then arises as to whether this law

is one that interferes or impedes or restricts in any way commerce among the states of the Union.

In the case of Machine Co. v. Gage, 100 U. S. 676, the question was presented to the supreme court as to whether a license tax upon peddlers selling sewing machines in the state of Tennessee was void and could not be enforced. The license was for the peddling of sewing machines, whether manufactured in the state of Tennessee or elsewhere. The court, after reviewing several of its decisions concerning statutes which it was alleged imposed restrictions upon interstate commerce, said:

"In all cases of this class to which the one before us belongs, it is a test question whether there is any discrimination in favor of the state or the citizens of the state which enacted the law. Wherever there is such discrimination, it is fatal. Other considerations may lead to the same result. In the case before us the statute in question, as construed by the supreme court of the state, makes no such discrimination. It applies to all sewing machines manufactured in the state and out of it. The exaction is not an unusual or unreasonable one. The state, putting all such machines upon the same footing with respect to the tax complained of, had an unquestionable right to impose the burden."

In the case before the court the law made no distinction as to the sale of cigarettes as to whether they were manufactured in or out of the state.

In the case of Osborne v. Mobile, 16 Wall. 479, the supreme court held that a license tax upon a business which included transportation beyond the state was not in violation of the national constitution, which gave congress power to regulate commerce among the states. In this case the supreme court said:

"In the second of the cases recently decided the whole court agreed that a tax on a business carried on within the state, and without discrimination between its citizens and the citizens of other states, might be constitutionally imposed and collected."

The case referred to is Case of the State Freight Tax, 15 Wall. 232.

In the case of Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. 367, the previous decisions of the supreme court upon laws affecting commerce between states are reviewed. In all these cases it appears that, to render a law void as affecting such commerce, there must be some discrimination against goods shipped from other states, or against persons engaged in such commerce. In that case it was held that a law requiring a license from a peddler of sewing machines was not void, although in the case presented the machine sold was manufactured in another state. In this case the doctrine is maintained that a license required by law upon a business, which law does not discriminate against foreign goods or persons of other states, is not in violation of the federal constitution.

The case of In re Minor, 69 Fed. 233, it must be confessed, is one very much like the one at bar. By the law of West Virginia, a license of $500 was required of any one engaged in the business of selling cigarettes or cigarette paper. Cigarettes were purchased in New York of the American Tobacco Company, and shipped to Minor, in West Virginia, and were exposed by him for sale at his (Minor's) place of business, at Martinsburg, in said state. The said American

Tobacco Company consigned to said Minor certain cigarettes to be sold by him as the agent of said company. The goods were exposed for sale in original packages, and two packages sold to one Gear-heardt by Minor. Minor was arrested, and made application for a writ of habeas corpus. The writ was granted, and he was dischar-ged. Judge Goff held that the law requiring a license for the sale of cigarettes named was void, as the same had been manufactured in New York, and shipped to said Minor in West Virginia, and by him exposed for sale in the original packages. In his opinion he says:

"It will be kept in mind that the state, by this legislation, is not taxing the property imported by the petitioner as it does other property within its limits by a general and uniform tax rate, but that this tax is imposed for the privilege of selling the imported articles, and is as to them special and additional."

If this was the effect of the Virginia statute, I do not think there is any doubt but that the position taken by that distinguished judge is fully sustained by the decisions of the supreme court. I do not believe the statute of Montana can be considered as a special tax imposed for the privilege of selling the imported article. The tax imposed is upon the business of selling cigarettes, whether manu-factured within the state or in another state. In that decision the learned judge states "that it is only by the sale of the imported arti-cle that it becomes mingled with the other property within the state." I am sure this position cannot be maintained. In the case of Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091, the supreme court said, of a tax imposed upon a certain lot of coal shipped from Pennsylvania and still in the boats in which it was shipped, and still owned by parties in the state from which it was shipped:

"It was imposed after the coal had arrived at its destination and was put up for sale. The coal had come to its place of rest for final disposal or use, and was a commodity in the market of New Orleans. It might continue in that condition for a year or two years or only for a day. It had become a part of the general mass of property in the state."

In the case of Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, the supreme court again affirmed the above rule, and said:

"When goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property, and amenable to its laws, provided that no discrimination be made against them as goods from another state."

The cigarettes sold by May in this case had reached their destina-tion and were exposed here for sale. They had reached their place of rest, and were to remain here until sold to customers. Under the rule above expressed, it would appear to me that they had become a part of the mass of the property of the state. Considering, then, that the tax in this case was upon the business of selling cigarettes, and that they had become a part of the general property of the state, I hold that the license law under consideration cannot be considered void, as in violation of any provision of the federal constitution.

There is a further point presented in this case. The license law which the applicant disregarded is a plain statute, making no discrim-ination against foreign goods or foreign citizens. The complaint under which the applicant was arrested charges simply a violation of

this statute. I cannot doubt that the court which tried the applicant had jurisdiction of this offense and of his person. Under such conditions, the authorities sustain the view that a federal court should not grant a writ of habeas corpus.

In the case of Ex parte Spickler, 43 Fed. 653, the circuit court, speaking by Judge Shiras, said:

"I do not question the existence of the power in the United States circuit court to grant writs of habeas corpus when it is alleged that a person is deprived of his liberty by state action contrary to the provisions of the federal constitution, but it is a power to be sparingly exercised. When it appears that the petitioner is held under the judgment of a state court of competent jurisdiction, before this court should grant him a discharge it should be made to appear that the illegality of his detention is beyond question; and in all cases wherein the pivotal point has not been finally decided by the supreme court, but still remains a debatable question, the circuit court should not discharge the petitioner, for this would be simply converting the writ of habeas corpus into a writ of error, by means of which this court would be asked to review the judgment of the state court upon a debatable question of law arising under the federal constitution, but which it was the duty of that court to investigate and decide."

It cannot be said that the very point presented in this case has been decided by the supreme court adverse to the right of the state to levy and collect this tax.

In the case of Ex parte Ulrich, 43 Fed. 661, the circuit court for the Western district of Missouri said:

"The district court of the United States has no jurisdiction, by writ of habeas corpus, to declare a judgment of a state criminal court a nullity, and discharge the petitioner from imprisonment imposed by it, where such court had plenary jurisdiction over the person, the place, the offense, and everything connected with it. In such cases it is the right and duty of the state courts to decide questions arising under the constitution and laws of the United States, and if it errs the remedy is by appeal."

The state court in this case would have the right to determine the question as to whether May was conducting the business of selling cigarettes without a license. If the evidence that he sold two packages of such merchandise on the 3d day of said June was not sufficient to show that he was conducting that business, that was an error which cannot be reviewed upon habeas corpus. It should be borne in mind, however, that it is admitted the petitioner was engaged in the business of selling cigarettes generally in Lewis and Clarke county. In the case of Ex parte Bigelow, 113 U. S. 328, 5 Sup. Ct. 542, a motion was made in the supreme court for permission to file a petition for a writ of habeas corpus. The question was presented as to the right to this writ. The court said:

"We are of the opinion what was done by that court was within its jurisdiction, the question thus raised by the prisoner was one which it was competent to decide, which it was bound to decide, and that its decision was the exercise of jurisdiction."

Under these circumstances the court held that the petitioner was not entitled to the writ, as the court in such a proceeding could not review the judgment of the court under which he was imprisoned. Holding, as I do, that the court under whose judgment petitioner is held in custody had jurisdiction of the offense charged in the com-

plaint before it and of the petitioner, I must maintain that this court cannot review its judgment. The writ of habeas corpus prayed for in this case is therefore denied.