SAWRIE v. STATE OF TENNESSEE.

(Circuit Court, M. D. Tennessee. September 30, 1897.)

CONSTITUTIONAL LAW — INTERSTATE COMMERCE — STATE STATUTES — ORIGINAL PACKAGE.

The Tennessee statute entirely prohibiting the importation or sale of cigarettes is invalid, as an interference with interstate commerce, in so far as it applies to cigarettes brought into the state from other states or foreign countries, and sold in the original packages of importation.

This was a Petition by W. S. Sawrie for a Writ of Habeas Corpus.

W. H. Fuller and Bryan & Cartwright, for petitioner.

G. W. Pickle and J. L. Rogers, for the State.

LURTON, Circuit Judge. The petitioner, W. S. Sawrie, alleges that he is unjustly and unlawfully detained and restrained of his liberty by one Edward Willard, a constable of the county of Davidson and state of Tennessee, by virtue and authority of a judgment or warrant of commitment issued by a justice of the peace of the county of Davidson, a copy of which judgment and warrant is attached to his petition. The petitioner, Sawrie, alleges that he was arrested under the warrant issued as aforesaid, charging him with the violation of a certain statute of the state of Tennessee, passed May 1, 1897, which act is in the following words and figures:

"An act to prohibit the sale, offering for sale, or giving away of any cigarettes, cigarette paper or substitute thereof.

"Section 1. Be it enacted by the general assembly of the state of Tennessee, that it shall be a misdemeanor for any person, firm or corporation to sell, offer to sell, or bring into the state for the purpose of selling, giving away or otherwise disposing of any cigarettes, cigarette paper or substitute for the same, and a violation of any of the provisions of this act shall be a misdemeanor, punishable by a fine of not less than fifty dollars.

"Sec. 2. Be it further enacted, that the grand juries shall have inquisitorial power over offenses committed under this act.

"Sec. 3. Be it further enacted, that this act take effect from and after the first day of May, 1897, the public welfare requiring it."

He alleges that he was arrested and tried before the said justice of the peace, and by him judged guilty of violating said act of the legislature of the state of Tennessee, and required to enter into a bail for his appearance at the next term of the criminal court of the county of Davidson, and, in default of said bail, to stand committed to the county jail of said county, and that in pursuance of said judgment and sentence he was placed in the custody of Edward Willard, a constable of said county, and, not having given said bail, he is by said Willard, constable as aforesaid, under and by authority of the judgment or warrant of commitment aforesaid, detained and restrained of his liberty.

The facts constituting the alleged offense committed by the said W. S. Sawrie, as stated by his petition, are as follows: That in the month of May, 1897, and after the first day thereof, the petitioner purchased in the state of Kentucky, from the American Tobacco Company, a corporation of the state of New Jersey, and having a

factory for the manufacture of cigarettes in the city of New York, and similar factories at several other points in the United States, but having no factory or office or warehouse in the state of Tennessee, a number of packages, each containing 10 Sweet Caporal cigarettes, and directed such packages of cigarettes to be shipped to him at Nashville, Tenn. Petitioner alleges that these cigarettes were manufactured by the American Tobacco Company at its factory in said city of New York, and there packed by it, in quantities of 10, in pasteboard slide boxes, upon each of which such boxes or packages were printed the name of the manufacturer of the cigarettes therein contained, the name or brand of the cigarettes therein contained, the number of the factory and internal revenue collection or manufacturing district in which such cigarettes were made, and the name of the state in which said factory was located, the number of cigarettes contained in the box or package, the caution notice required by the laws of the United States, the internal revenue stamp for 10 cigarettes pasted across the end of such box or package so as to act as a seal thereon and therefor, and which had to be broken and destroyed to open said box or package, and all the other requirements of the laws and regulations of the United States governing the packing and sale of cigarettes. He avers that all of said boxes or packages of cigarettes so bought by him were manufactured and packed by the American Tobacco Company, and were by the said company, immediately after their sale to the petitioner, shipped from the state of Kentucky to petitioner, in the city of Nashville, in the state of Tennessee, in the original packages above described, without case, covering, or inclosure of any kind around or about any of said packages, but each such package loose and separate from each other, and were by the petitioner received in such separate packages in the same condition in which they were shipped, and just as they were shipped in Kentucky and received in Tennessee, and were exposed for sale by the petitioner at his place of business in the city of Nashville, and one of said packages containing 10 Sweet Caporal cigarettes as aforesaid was sold by petitioner on the 5th day of May, 1897, which such sale was the basis of the criminal proceedings herein referred to, and was sold by the petitioner only in the original, unbroken package, as packed at its said factory in the state of New York by the manufacturer, and shipped from the state of Kentucky to the state of Tennessee, and as received by him, in the state of Tennessee, from said state of Kentucky aforesaid. Petitioner further alleges that his detention and restraint of his liberty as aforesaid are illegal and unjust, and in contravention and violation of article 1, § 8, cl. 3, of the constitution of the United States, in that said act of the legislature of the state of Tennessee, by virtue of which, and for the alleged violation of which, your petitioner was arrested, tried, and convicted, and is now detained and restrained of his liberty as aforesaid, is, in so far as it applies, or is intended to apply, to the acts done by petitioner, unconstitutional and void, because in conflict with, and in violation of, the constitution of the United States, particularly article 1, § 8, cl. 3, thereof. Whereupon, to be relieved from such

unlawful detention and imprisonment, petitioner prays that a writ of habeas corpus be directed to the said Edward Willard, constable as aforesaid, and that he be brought before the circuit court of the United States, to the end that the validity of his imprisonment be inquired into, and that he be discharged and suffered to go at liberty.

The Tennessee act is an absolute prohibition of all commerce in cigarettes. There is no discrimination between cigarettes of domestic manufacture and those imported from another state. A sale by an importer in the original package is just as distinctly penal as would be a sale of an article which was of domestic manufacture. Limited to cigarettes of domestic origin, or cigarettes which, though imported from a foreign nation or another state, have lost their character as an import by a breaking of the original package, or by having once been sold in the state, the act would not conflict with any provision of the federal constitution. Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 1257; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273; Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154. The question for my determination is whether or not the act is valid in so far as it prevents the importation and sale by the importer of cigarettes in original packages. The facts make a clear case of importation from another state, and a sale in this state by the importer in original packages. Such an importation and sale are not only prohibited by the broad and general terms of the statute, but an importation for the purpose of selling within the state is expressly made a penal offense. Though the act contains no recital of the objects or purposes of the legislature in imposing so absolute a prohibition upon this particular article of commerce, yet I feel authorized to assent to the assumption of the attorney general, who has appeared for the state, and to treat the act as passed for the purpose of protecting the health and morals of the people of the state against the evils incident to the cigarette habit. In favor of the validity of the act, it has been urged that the police power of the state has not been delegated to the general government, but has been reserved to the states and the people thereof, and that this act is but an exercise of the state's police power, and not, therefore, a regulation of commerce among the states, within the meaning of article 1, § 8, cl. 3, of the constitution of the United States, which confers upon the congress power "to regulate commerce with foreign nations and among the several states." It will not be contended that the delegation to congress of the power to regulate commerce in and of itself involved a surrender of the police power,—a power so wide and comprehensive that it has been said to extend "to the protection of the lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the state." In the case of Railroad Co. v. Husen, 95 U. S. 465–470, the court said:

"We admit that the deposit in congress of the power to regulate foreign commerce and commerce among the states was not a surrender of that which may properly be denominated 'police power.' What that power is, it is difficult to define with sharp precision. It is generally said to extend to making regulations promotive of domestic order, morals, health, and safety."

But in the same case the court also said:

"But, whatever may be the nature and reach of the police power of a state, it cannot be exercised over a subject confided exclusively to congress by the federal constitution. It cannot invade the domain of the national government. It was said in Henderson v. Mayor of City of New York, 92 U. S. 259, to 'be clear, from the nature of our complex form of government, that, whenever the statute of a state invades the domain of legislation which belongs exclusively to the congress of the United States, it is void, no matter under what class of powers it may fall, or how closely allied it may be to powers conceded to belong to the states.' Substantially the same thing was said by Chief Justice Marshall in Gibbons v. Ogden, 9 Wheat. 1. Neither the unlimited powers of a state to tax, nor any of its large police powers, can be exercised to such an extent as to work a practical assumption of the powers properly conferred upon congress by the constitution. Many acts of a state may, indeed, affect commerce, without amounting to a regulation of it, in the constitutional sense of the term. And it is sometimes difficult to define the distinction between that which merely affects or influences, and that which regulates or furnishes a rule for conduct."

In the latest expression of that court in the very fine opinion of Justice Harlan in Hennington v. Georgia, 163 U. S. 299–317, 16 Sup. Ct. 1086, the learned justice, after reviewing a number of cases in which the validity of various state statutes passed in pursuance of the police power of the states which indirectly or in a slight degree affected commerce among the states was under consideration, said:

"These authorities make it clear that the legislative enactments of the states, passed under their admitted police powers, and having a real relation to the domestic peace, order, health, and safety of their people, but which, by their necessary operation, affect to some extent, or for a limited time, the conduct of commerce among the states, are yet not invalid by force alone of the grant of power to congress to regulate such commerce, and if not obnoxious to some other constitutional provision, or destructive of some right secured by the fundamental law, are to be respected in the courts of the Union until they are superseded and displaced by some act of congress passed in execution of the power granted to it by the constitution. Local laws of the character mentioned have their source in the powers which the states reserved, and never surrendered to congress,—of providing for the public health, the public morals, and the public safety,—and are not, within the meaning of the constitution, and considered in their own nature, regulations of interstate commerce, simply because, for a limited time or to a limited extent, they cover the field acquired by those engaged in such commerce."

Does this Tennessee legislation, adopted, in the exercise of the police power of the state, for the protection of its people against the evils of unrestricted commerce in the cigarette, belong to that class of enactments described by Justice Harlan in Hennington v. Georgia, cited above, as an act valid until superseded by some act of congress which, by its necessary operation, affects to some extent, or for a limited time, the conduct of commerce among the states; or does it belong to that other class of state enactments which invade the domain of the national government by undertaking to regulate a subject which is committed to the exclusive jurisdiction of congress? The principle by which the courts are to be governed in determining whether a particular statute belongs to the one class of statutes or the other was thus stated by Chief Justice Fuller in the opinion of the court in Leisy v. Hardin, 135 U. S. 100–119, 10 Sup. Ct. 687:

"The doctrine now firmly established is, as stated by Mr. Justice Field in Bowman v. Railway Co., 125 U. S. 507, 8 Sup. Ct. 689, 1062, that where

the subject upon which congress can act under its commercial power is local in its nature or sphere of operation, such as harbor pilotage, the improvement of harbors, the establishment of beacons and buoys, to guide vessels in and out of port, the construction of bridges over navigable rivers, the erection of wharves, piers, and docks, and the like, which can be properly regulated only by special provisions adapted to their localities, the states can act until congress interferes and supersedes its authority; but where the subject is national in its character, and admits and requires uniformity of regulation, affecting alike all the states, such as transportation between the states, including the importation of goods from one state into another, congress can alone act upon it and provide the needed regulations. The absence of any law of congress on the subject is equivalent to its declaration that commerce in that matter shall be free. Thus, the absence of regulations as to interstate commerce with reference to any particular subject is taken as a declaration that the importation of that article into the states shall be unrestricted. It is only after the importation is completed, and the property imported has mingled with and become a part of the general property of the state, that its regulations can act upon it, except so far as may be necessary to insure safety in the disposition of the import until thus mingled. The conclusion follows that as the grant of the power to regulate commerce among the states, so far as one system is required, is exclusive, the states cannot exercise that power without the assent of congress, and, in the absence of legislation, it is left for the courts to determine when state action does not amount to such exercise, or, in other words, what is or is not a regulation of such commerce. When that is determined, controversy is at an end."

In the later case, In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, the court again said:

"The power of congress to regulate commerce among the several states, when the subjects of that power are national in their nature, is also exclusive. The constitution does not provide that interstate commerce shall be free, but, by the grant of this exclusive power to regulate it, it was left free except as congress might impose restraint. Therefore it has been determined that the failure of congress to exercise this exclusive power in any case is an expression of its will that the subject shall be free from restrictions or impositions upon it by the several states. Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592. And, if a law passed by a state in the exercise of its acknowledged power comes into conflict with that will, the congress and the state cannot occupy the position of equal opposing sovereignties, because the constitution declares its supremacy and that of the laws passed in pursuance thereof. Gibbons v. Ogden, 9 Wheat. 1, 210. That which is not supreme must yield to that which is supreme. Brown v. Maryland, 12 Wheat. 419, 448."

In the case last cited the court adopts the observations of Mr. Justice Catron as to the distinction between the incidental regulation of commerce admissible under the reserved police power of the states and the power of commercial regulation delegated to congress. Concerning a statute of the state of New Hampshire regulating the sale of liquor in the state, Justice Catron said, in the License Cases, 5 How. 599, that:

"The law and the decision apply equally to foreign and to domestic spirits, as they must do on the principles assumed in support of the law. The assumption is that the police power was not touched by the constitution, but left to the states as the constitution found it. This is admitted; and whenever a thing, from character or condition, is of a description to be regulated by that power in the state, then the regulation may be made by the state, and congress cannot interfere. But this must always depend upon facts, subject to legal ascertainment, so that the injured may have redress. And the fact must find its support in this: Whether the prohibited article belongs to, and is subject to be regulated as part of, foreign commerce, or of commerce among the states. If, from its nature, it does not belong to commerce, or if its con-

dition, from putrescence or other cause, is such, when it is about to enter the state, that it no longer belongs to commerce, or, in other words, is not a commercial article, then the state power may exclude its introduction. And as an incident to this power a state may use means to ascertain the fact. And here is the limit between the sovereign power of the state and the federal power. That is to say, that which does not belong to commerce is within the jurisdiction of the police power of the state, and that which does belong to commerce is within the jurisdiction of the United States."

In Leisy v. Hardin, 135 U. S. 100–110, 10 Sup. Ct. 681, the question involved was the validity of an Iowa act in so far as it prohibited the importation and sale within the state of Iowa, except for mechanical, culinary, and medicinal purposes, of ardent spirits, distilled liquors, ale, and beer. The validity of the act was defended upon the grounds assumed here, namely, that the act was not expressly intended to regulate interstate commerce, but was an exercise by the state of its police power for the purpose of protecting its people against the evil consequences of unrestricted trade in such deleterious articles. The court in that case said:

"That ardent spirits, distilled liquors, ale, and beer are subjects of exchange, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decisions of the courts, is not denied. Being thus articles of commerce, can a state, in the absence of legislation on the part of congress, prohibit their importation from abroad, or from a sister state? or, when imported, prohibit their sale by the importer? If the importation cannot be prohibited without the consent of congress, when does property imported from abroad, or from a sister state, so become part of the common mass of property within the state as to be subject to its unimpeded control?"

So in this case it must be recognized that the cigarette is equally a well-known subject of barter, sale, trade, and commerce,—so recognized in all the channels of commerce, and by the laws of congress which prescribe the original package for purposes of taxation. The question here, as in the Whisky Case, just cited, is: Whether, being an article of commerce, can the state of Tennessee, in the absence of legislation by congress, prohibit their importation from a sister state? Or, when imported, prohibit their sale by the importer? No important distinction can be drawn between this case and Leisy v. Hardin. If all that can be said touching the evil consequences of the use of the cigarette upon the health and morals of the state be admitted, much more can be said, and was said, of the evils sought to be guarded against by the Iowa prohibition statute. If the traffic in ardent spirits is a recognized and legitimate subject of commerce, so is the traffic in the cigarette. If congress has recognized the fact that the one is an article of traffic and commerce, by prescribing an original package and imposing a tax thereon, so it has recognized the other. A distinction is sought to be drawn by the state's counsel between the case at bar and Leisy v. Hardin, in that the Tennessee statute absolutely prohibits all commerce in the cigarette for any purpose whatever, while the Iowa statute under consideration in Leisy v. Hardin recognized ardent spirits, wine, beer, and ale as objects of commerce, by permitting their sale by licensees of the state for mechanical, medicinal, and sacramental purposes. The argument based on this difference is that under the police power a state

may prohibit all traffic in a given article which, in the judgment of the legislature, is deleterious to the health or morals of its people, and that the power of congress to regulate commerce among the states can have no application in respect to an article when its commercial qualities have been destroyed by an exercise of the police power. This argument was met by Justice Catron in the License Cases, 5 How. 599 et seq.:

"If this be the true construction of the constitutional provision," said Justice Catron, "then the paramount power of congress to regulate commerce is subject to a very material limitation; for it takes from congress, and leaves with the states, the power to determine the commodities or articles of property which are the subject of lawful commerce. Congress may regulate, but the states determine what shall or shall not be regulated. Upon this theory, the power to regulate commerce, instead of being paramount over the subject, would become subordinate to the state police power; for it is obvious that the power to determine the articles which may be the subjects of commerce, and thus to circumscribe its scope and operation, is, in effect, the controlling one. The police power would not only be a formidable rival, but, in a struggle, must necessarily triumph over the commercial power, as the power to regulate is dependent upon the power to fix and determine upon the subjects to be regulated. The same process of legislation and reasoning adopted by the state and its courts could bring within the police power any article of consumption that a state might wish to exclude, whether it belonged to that which was drunk, or to food and clothing, and with nearly equal claims to propriety, as malt liquors and the produce of fruits other than grapes stand on no higher grounds than the light wines of this and other countries, excluded, in effect, by the law as it now stands."

This argument is adopted and repeated in Re Rahrer, 140 U. S. 558, 559, 11 Sup. Ct. 865. This recognition in the Iowa statute of the commercial character of ardent spirits for some purposes was not the subject of any observations by court or counsel, so far as can be learned from the report of that case.

In Re Rahrer, already cited, the court, referring to Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. 689, 1062, and Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, say that the laws under consideration in these cases—

"Were enacted in the exercise of the police power of the state, and not at all as regulations of commerce with foreign nations and among the states, but as they inhibited the receipt of an imported commodity, or its disposition before it had ceased to become an article of trade between one state and another, or another country and this, they amounted, in effect, to a regulation of such commerce. Hence it was held that inasmuch as interstate commerce, consisting in the transportation, purchase, sale, and exchange of commodities, is national in its character, and must be governed by a uniform system, so long as congress did not pass any law to regulate it specifically, or in such way as to allow the laws of the state to operate upon it, congress thereby indicated its will that such commerce should be free and untrammeled, and therefore that the laws of Iowa, referred to, were inoperative, in so far as they amounted to regulations of foreign or interstate commerce, in inhibiting the reception of such articles within the state, or their sale, upon arrival, in the form in which they were imported there from a foreign country or another state."

If the regulation is in respect to a subject within the exclusive domain of the national government, the enactment is repugnant to the commercial clause of the constitution, without regard to whether the prohibition of commerce be partial or complete. The Iowa statute was held to be repugnant to the constitution, not because com-

merce in the article was permitted for a limited purpose and under state license, but because any regulation of traffic in a commercial commodity of recognized character, as such, was an intrusion upon the exclusive power of the national government. The Iowa statute would have been no less repugnant if it had prohibited all commerce in ardent spirits, wines, etc. It must follow, if it was not competent to inhibit the importation and sale by the importer in original packages of spirits, wine, beer, to be consumed as a beverage, that it would be equally inadmissible to make the exclusion absolute. If the state may not regulate commerce among the states in a commercial article at all, it may not oust the national jurisdiction by merely declaring a commercial commodity not to be a commercial commodity merely because the local policy of the state would be subserved thereby. The conclusion of the opinion of the chief justice fully and clearly states the ground upon which the Iowa statute was held to be void. The learned chief justice, after discussing the many cases where state enactments had been upheld, said:

"These decisions rest upon the undoubted right of the states of the Union to control their purely internal affairs, in doing which they exercise powers not surrendered to the national government; but whenever the law of the state amounts essentially to a regulation of commerce with foreign nations or among the states, as it does when it inhibits, directly or indirectly, the receipt of an imported commodity or its disposition before it has ceased to become an article of trade between one state and another, or another country and this, it comes in conflict with a power which, in this particular, has been exclusively vested in the general government, and is therefore void. * * * Whatever our individual views may be as to the deleterious or dangerous qualities of particular articles, we cannot hold that any articles which congress recognizes as subjects of interstate commerce are not such, or that whatever are thus recognized can be controlled by state laws amounting to regulations, while they retain that character, although, at the same time, if directly dangerous in themselves, the state may take appropriate measures to guard against injury before it obtains complete jurisdiction over them. To concede to a state the power to exclude, directly or indirectly, articles so situated, without congressional permission, is to concede to a majority of the people of a state, represented in a state legislature, the power to regulate commercial intercourse between the states, by determining what shall be its subjects, when that power was distinctly granted to be exercised by the people of the United States, represented in congress, and its possession by the latter was considered essential to that more perfect Union which the constitution was adopted to create. Undoubtedly, there is difficulty in drawing the line between the municipal powers of the one government and the commercial powers of the other, but when that line is determined, in the particular instance, accommodation to it, without serious inconvenience, may readily be found, to use the language of Mr. Justice Johnson in Gibbons v. Ogden, 9 Wheat. 1, 238, in 'a frank and candid co-operation for the general good.'" Leisy v. Hardin, 135 U. S. 123–125, 10 Sup. Ct. 681, 689.

If the state enactment regulating traffic in a particular article be in fact a quarantine or an inspection statute, and, as such, is aimed at something uncommercial, by reason of its state or condition, such as articles infected, or disguised so as to be a cheat calculated to lead a purchaser into buying something he did not intend to buy, as in Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154, the enactment may be upheld as an exercise of the police power of the states, and not a regulation of commerce. But this Tennessee statute, in so far as it prevents importation and sales in the original

package by the importer, is not a quarantine or inspection statute, and is not based upon the state or condition of the cigarette. Hennington v. Georgia, 163 U. S. 299, 16 Sup. Ct. 1086, involved a statute of the state of Georgia prohibiting any operation of railroad trains on the Sabbath day. It was upheld as an exercise of the police power of the state, and not a regulation of interstate commerce. The opinion contains no language in any way modifying the doctrine of Leisy v. Hardin, or that of the cases following and reasserting the doctrine of that case. There is no possible conflict between Hennington v. Georgia and Leisy v. Hardin. It is but another of the class of cases like those considered and distinguished in Bowman v. Railway Co., Leisy v. Hardin, and In re Rahrer. The case at bar does not fall within that class, and is controlled by Leisy v. Hardin, from which it cannot be distinguished. The case reported in 69 Fed. 233, under the style of "In re Minor," is not precisely in point, as the statute under consideration was purely a revenue enactment. In Iowa v. McGregor, 76 Fed. 956, a police statute precisely like the Tennessee act, except for a proviso that the act should not apply to jobbers doing an interstate business with customers outside the state, was held to be invalid, so far as it applied to sale by the importer in original packages. The Tennessee statute is too broad, and is repugnant to the commercial clause of the constitution of the United States, in so far as it inhibits the importation of cigarettes from foreign nations or other states, or their sale by the importer in the form in which they were imported. I reach this conclusion without any hesitation, though reluctant to even partially strike down a statute aimed at the suppression of an evil of most pronounced character. The detention of the petitioner under the commitment of the state court is illegal, and he must be set at liberty.