## City of Newport v. Wagner, et al.

(Decided February 23, 1916.)

### Appeal from Campbell Circuit Court.

Licenses—Power to License or Tax—Ordinances.—The business of selling goods in a State, after the goods have been brought into the State for sale, without any previous negotiations for the purchase of the goods by citizens of the State where sold, while the goods were in another State, is a business wholly within the State where the goods are sold, and one engaged in selling such goods as a business within the State where they are contracted for, sold and delivered, may be required by the local authorities to pay a license tax, which is imposed upon all persons engaged in the business of selling goods within the municipality where the business is carried on.

OTTO WOLF for appellant.

H. B. MACKOY and MACKOY & MACKOY for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 30th day of April, 1896, the General Council of the city of Newport, which is a city of the second class, adopted an ordinance, which is entitled, "An ordinance requiring persons, corporations and companies

carrying on business, occupations or practicing their professions in the city of Newport to take out a license tax therefor, and prescribing a penalty for the failure of such person, corporation, or company so to do." This ordinance was amended on April 30, 1910. By the terms of this ordinance each person, corporation or company, before being permitted to carry on any trade, business, or profession in the city of Newport, must first have obtained a license therefor. The ordinance prescribed in what manner the license should be obtained, to whom the tax was payable, and the amount of the license tax required for the carrying on of each trade, business, or profession, and further provided, that the person, corporation or company holding such a license should exhibit it in some conspicuous place in the house wherein the business was carried on, or if the person holding the license should do business on foot, he should have the license with him, and in case of peddlers or hucksters or other persons, doing business with vehicles, should have a tag or tags placed in a conspicuous place upon his vehicle, indicating that he was a holder of such license. By section 10, of the ordinance, the license fee imposed by the ordinance levied and collected should be for the purpose of paying the expenses of maintaining the city government. By other provisions of the ordinance a penalty was imposed upon such persons, corporations or companies as violated the ordinance and fixed the penalties to be imposed upon them, which was a fine which might be imposed by the police court.

The license tax required by the ordinance for each person, corporation or company engaging in manufacturing or wholesale dealing in "soft drinks" was the sum of $150.00. A similar ordinance, so far as it has any application to wholesale dealers, was adopted by the General Council of the city on the 1st day of April, 1912, and which repealed the prior ordinance on the subject. While the two ordinances above mentioned were in force, the appellees, W. T. Wagner & Sons, took out licenses during the years 1910, 1911, 1912 and 1913, for the privilege of engaging as wholesale dealers in the business of selling "soft drinks" by the wholesale and paid the license tax for each year, in all amounting to the sum of $600.00.

The appellees brought this suit in the Campbell circuit court against the appellant, City of Newport, alleg-

ing that they had, under a mutual mistake of themselves and the appellant, that they were compellable, in order to carry on the business of a wholesale dealer in "soft drinks," in the city of Newport, to procure a license and pay the tax required by the ordinance and in default of so doing would incur the penalties denounced by the ordinance, had paid the license tax for the years 1910, 1911, 1912 and 1913, amounting in all to the sum of $600.00.   They further alleged that they were a partnership and were engaged in manufacturing, selling and delivering the different waters and drinks commonly known and described as "soft drinks," in the city of Cincinnati and state of Ohio; and during the years for which they had paid the license taxes did a portion of their business in Newport, Kentucky; that the business carried on by them in Newport was conducted as follows:

Their goods were manufactured in Cincinnati; and were sold and delivered to the retail dealers in such goods in Newport; that the deliveries, except as hereinafter stated, were made upon contracts of sale therefor; that these contracts were made through orders received at their place in Cincinnati, from the persons in Newport, by means of the post office or telephone, or through orders received by the solicitors of appellees, or the drivers of their wagons, which ply between their place of business in Cincinnati and Newport; that at the time the orders were received and the contracts of sale made, the goods, except as hereinafter stated, were situated in the state of Ohio; that the greatest number of persons to whom the goods were delivered were regular customers of appellees and to whom their vehicles make visits three times each week for the purpose of soliciting orders by the drivers of the vehicles, and delivering to them goods which had been previously ordered; that most of those persons, who were regular customers, were retail dealers, and by a general arrangement made through standing orders given prior to or at the time of the beginning of the deliveries, the appellees kept them supplied with the goods without any specific orders being given in advance of a visit by appellees' vehicles, and at the time of a visit by one of appellees' wagons, in accordance with the general arrangement, did deliver to such customers so much of the goods as they might need, but the goods were of the same kind as those called for in the standing orders

and were delivered upon the same terms, in all respects, and for the same prices and upon the same credits, as specified in said standing orders, and for the purpose of filling the standing orders, under said general arrangement, the wagons of appellee carried a sufficient amount of the goods to furnish a customer with such amount as he desired to buy, but with the exception of the goods so carried, appellees had at no time had any goods, which had not been sold at the time of delivery, in Newport; that appellees once in a while sold a case of said waters and drinks from its said vehicle to some person who asked to purchase same, or to some person, who had been solicited to become or who had signified, that he would or might become a regular customer of said waters and drinks, if those so sold to him should prove satisfactory; that all of their goods were manufactured and bottled at their plant in Cincinnati; and were put in covered and fastened bottles and siphons and there packed in separate and distinct packages or cases, "as the nature and form of the particular waters or drinks required, and according to the custom of appellees and those persons who manufacture and sell said waters and drinks and who constitute the trade in general, and were then shipped in appellees' vehicles and delivered to appellees' said customers in said city of Newport, in the same form and shape as that in which they had been shipped and carried;" that said goods remained in unbroken packages, and in the same form and shape, at all times, from the point of shipment to the point of delivery, and none of said packages were ever sold, except as an entirety.

The appellees alleged, further, that the provisions of the ordinance, in so far as it attempted to apply to them and to their business in the city of Newport, was in contravention of article 1, section 8, paragraph 3, of the federal constitution, in that their business was, at all times, interstate commerce, and that the provisions of the ordinance was a restraint to and regulation of interstate commerce.

The appellant interposed a general demurrer to the petition, which was overruled by the court, and judgment rendered in favor of appellees for the recovery of the sums sued for, and perpetually enjoined the appellant from interfering with appellees or their agents because of their failure to procure a license and pay the tax, in

the future. The appellant saved proper exceptions to the judgment and now appeals to this court.

The appellant, by its demurrer, admitted as true the statement of facts, as set forth in the petition, and the question now presented for adjudication is, Is the ordinance, as applied to the business conducted by appellees, a regulation of and restraint upon interstate commerce so as to be in violation of the constitutional authority of the Congress of the United States, to regulate commerce among the states? When the exact meaning of the allegations of the petition are extracted, it seems to set forth the following as the facts, as constituting the exact manner of conducting appellees' business. They are manufacturers of "soft drinks," in Cincinnati, Ohio; they sell some goods in Newport, Kentucky, upon orders to them from retail dealers in Newport, which are received by them through the mail and telephone and by means of solicitors for them, and through the drivers of their wagons, acting as solicitors, in Newport; when a retail dealer has theretofore purchased goods from them, they place a load of their goods upon their wagons and send it into Newport, and it is there exposed for sale to such dealer, and if he desires to do so, he makes a purchase of such quantity as he desires, and the goods are then and there delivered to him; if any person, other than one having theretofore been a customer, desires to buy any of the goods while the wagons are in Newport, a sale is made to him and the goods then and there delivered; the goods are sold and delivered in the same bottles and vessels in which they were shipped, and packages containing a number of bottles are not broken before sale and delivery.

It has been held by the courts of the United States that a state has no authority to levy a tax upon the soliciting and taking of orders in one state, for the sale of goods which are in another state, and which are to be transported by a common carrier from the principal, for whom the contracts of sale were made, to the purchaser. Brennan v. Titusville, 153 U. S., 289, and many others. Contracts for the sale of goods made by a citizen of one state with a citizen of another state, through the medium of the mails or by telephone, and which are delivered by the seller to the purchaser in "original packages," by means of vehicles, it seems would be protected from taxation by the authorities of the state to

which they are transported, while in the "original packages," and in the hands of the seller. Goods delivered to a common carrier at a point without the state, consigned to a purchaser at his residence within the state, are exempt from state regulations, during the course of transportation. Rhodes v. Iowa, 170 U. S., 412. It was held in Leisy v. Hardin, 135 U. S., 100; Lyng v. Michigan, 135 U. S., 161; Schollenberber v. Pennsylvania, 171 U. S., I., that a state has no power over goods shipped from one state to another for sale in interstate commerce, until the one receiving the goods has so acted upon them, that they have become incorporated and mixed with the mass of property in the state, which happens when the original package is no longer such in his hands. In Brown v. Houston, 114 U. S., 622, and in Emert v. Missouri, 156 U. S., 319, it was held that property sent from one state to another, for the purpose of sale, became a part of its general property and amenable to its laws and subject to its taxing power, provided no discrimination be made against such property on account of its ownership or origin. In the case at bar, some of the transactions were, without doubt, such transactions in interstate commerce as would not render the appellees liable for the license tax, which was imposed upon a wholesale dealer in Newport by the ordinance, but the transactions, when appellees, without having received any order for the shipment of goods from their place of business in Cincinnati, and without any contract for their delivery, brought the goods into Kentucky and into Newport, and there exposed them for sale, and sold and delivered them, these were transactions in Kentucky, the contract, sale and delivery. The mere fact that appellees contemplated that some one, who had previously purchased goods, would purchase the goods when they should be exposed for sale, in Newport, could not be construed into a negotiation between citizens of different states, for the sale of goods then in one state to be delivered in another; neither was there any contract of sale of such goods, except in Kentucky. So far as the sales made in Kentucky were concerned, when made after the goods were brought into Newport, and without any previous negotiations for the purchase of the goods by the persons by whom they were purchased and to whom they were delivered in Newport, the appellees were simply doing business as wholesale deal-

ers•in "soft drinks," wholly within the city of Newport, although the goods had their origin in Ohio. Whether the goods so.sold by them are within the protecting clause of the constitution of the United States, relating to interstate commerce, or whether sold in the "original packages" or not, does not seem to be material. The tax imposed by the ordinance was not a direct tax upon the goods, but the license and tax was upon the privilege of selling goods in the city of Newport, in the peculiar way of a wholesale .dealer. Under such license and tax the appellees were authorized to sell goods manufactured in the State of Kentucky, or elsewhere, as well as goods manufactured in the State of Ohio. The mere fact that such license tax upon a wholesale dealer, who carries on his business within a state, may incidentally affect interstate commerce, would not deprive the State of the authority to levy it, nor would it destroy the validity of the ordinance. Kolb v. Booneton, 44 Atl., 873; Stockard v. Morgan, 105 Tenn., 412; Oliver Finney Grocery Co. v. Speed, 87 Fed., 408; York v. Chicago, etc. R. Co., 76 N. W., 1065; In Re·May, 82 Fed., 422; Osborne v. Mobile, 16 Wall., 479; Raquet v. Wade, 4 Ohio, 107; Territory v. Farnsworth, 5 Pac., 869. A state is authorized to levy a tax upon any business carried on within the state, as on the occupation of doing business as a merchant, if such tax is not levied in such a way as to discriminate against the persons residing in another state or the products or manufactures of another state, and the levying of such a tax and in such way is not a regulation of or restraint upon interstate commerce. In Woodruff v. Parham, 8 Wall, 123, it was held that a uniform tax imposed by an ordinance of Mobile on all sales by auction in the city, was valid, and not affecting interstate commerce, because it was a simple tax on sales of merchandise imposed alike upon all sales made in the city, whether a sale was made by a citizen of Alabama or another state, or whether the goods sold were the produce of that state or another. In Osborne v. Mobile, 16 Wall., 479, it was held that a tax imposed by a state upon a business carried on within the state, and without any discrimination between its citizens and those of other states, was valid. The inhibition of the constitution of the United States as regards interstate commerce against statutes of states and ordinances of cities, which levy taxes upon a business which is carried

on wholly within the state or city making the ordinance, is directed against such statutes and ordinances as discriminate injuriously in the manner of laying or collecting the taxes against the citizens or products of one state in favor of those of another, and such statutes and ordinances as these have been uniformly held to be unconstitutional. Com. v. Meyer, 90 Va., 809; Osborne v. Mobile, *supra;* Emert v. Mo., 156 U. S., 319; Walling v. Michigan, 116 U. S., 446; Robbins v. Shelby Taxing Dis., 120 U. S., 489; Webber v. Va., 103 U. S., 344; Cook v. Penn., 97 U. S., 556; Welton v. Mo., 91 U. S., 275; Ward v. Md., 12 Wall., 418; Hinson v. Lott, 8 Wall., 148. The ordinance complained of in the case at bar does not discriminate between the citizens or products of the states, but the tax provided by it is levied upon any citizen who engages in the business of a wholesale dealer in "soft drinks" within the municipality. To place any other construction upon the laws relating to interstate commerce would be to make an injurious discrimination in favor of the citizens and goods of other states, as against the citizens of Newport.

For the reasons indicated the judgment is reversed and cause remanded for proceedings consistent with this opinion.