## OSBORNE *v.* MOBILE.

The State of Georgia chartered a company to transact a general forwarding and express business. The company had a business office at Mobile, in Alabama, and there did an express business which extended within and beyond the limits of Alabama; or, rather, there made contracts for transportation of that sort.

An ordinance of the city of Mobile was then in force, requiring that every express company or railroad company doing business in that city, and having a business extending *beyond* the limits of the State, should pay an annual license of $500, which should be deemed a first-grade license; that every express or railroad company doing business *within* the limits of the State should take out a license called a second-grade license and pay therefor $100; and that every such company doing business *within the city* should take out a third-grade license, paying therefor $50. And it subjected any person or incorporated company who should violate any of its provisions to a fine not exceeding $50 for each day of such violation.

*Held*, that the ordinance, in requiring payment for a license to transact in Mobile a business extending beyond the limits of the State of Alabama, was not repugnant to the provision of the Constitution, vesting in the Congress of the United States the power "to regulate commerce among the several States."

ERROR to the Supreme Court of the State of Alabama.

Osborne was the agent, at Mobile, Alabama, of the South-

---

* *Supra.*

ern Express Company, incorporated by the State of Georgia, and as such transacted a general forwarding and express business within and extending beyond the limits of Alabama.

An ordinance of the city of Mobile was then in force, requiring that every express company or railroad company doing business in that city, and having a business extending beyond the limits of the State, should pay an annual license of $500, which should be deemed a first-grade license; that every express or railroad company doing business within the limits of the State should take out a license called a second-grade license, and pay therefor $100; and that every such company doing business within the city should take out a third-grade license, paying therefor $50. It subjected any person or incorporated company who should violate any of its provisions to a fine not exceeding $50 for each day of such violation.

On the 10th of February, 1869, Osborne was fined by the mayor of Mobile for violating that ordinance in conducting the business of his agency without having paid the $500 and obtained the license required. He appealed to the Circuit Court of the State, which affirmed the judgment of the mayor. He then appealed to the Supreme Court of Alabama, and that court affirmed the judgment of the Circuit Court. A writ of error brought the case here.

The question was whether the ordinance, in requiring payment for a license to transact in Mobile a business extending beyond the limits of the State of Alabama, was repugnant to the provision of the Constitution, vesting in the Congress of the United States the power " to regulate commerce among the several States."

*Messrs. B. R. Curtis and Clarence Seward, for the plaintiff in error; Mr. P. Phillips, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

In several cases decided at this term we have had occasion to consider questions of State taxation as affected by this

clause of the Constitution. In one,* we held that the State could not constitutionally impose and collect a tax upon the tonnage of freight taken up within its limits and carried beyond them, or taken up beyond its limits and brought within them; that is to say, in other words, upon interstate transportation. In another,† we held that a tax upon the gross receipts for transportation by railroad and canal companies, chartered by the State, is not obnoxious to the objection of repugnancy to the constitutional provision.

The tax on tonnage was held to be unconstitutional because it was in effect a restriction upon interstate commerce, which by the Constitution was designed to be entirely free. The tax on gross receipts was held not to be repugnant to the Constitution, because imposed on the railroad companies in the nature of a general income tax, and incapable of being transferred as a burden upon the property carried from one State to another.

The difficulty of drawing the line between constitutional and unconstitutional taxation by the State was acknowledged, and has always been acknowledged, by this court; but that there is such a line is clear, and the court can best discharge its duty by determining in each case on which side the tax complained of is. It is as important to leave the rightful powers of the State in respect to taxation unimpaired as to maintain the powers of the Federal government in their integrity.

In the second of the cases recently decided, the whole court agreed that a tax on business carried on within the State and without discrimination between its citizens and the citizens of other States, might be constitutionally imposed and collected.

The case now before us seems to come within this principle.

The Southern Express Company was a Georgia corporation carrying on business in Mobile. There was no discrimination in the taxation of Alabama between it and the

---

* Case of the State Freight Tax, 15 Wallace, 232.

† Case of the State Tax on Railway Gross Receipts, Ib. 284.

corporations and citizens of that State. The tax for license was the same by whomsoever the business was transacted. There is nothing in the case, therefore, which brings it within the case of *Ward* v. *Maryland.** It seems rather to be governed by the principles settled in *Woodruff* v. *Parham.*†

Indeed, no objection to the license tax was taken at the bar upon the ground of discrimination. Its validity was assailed for the reason that it imposed a burden upon interstate commerce, and was, therefore, repugnant to the clause of the Constitution which confers upon Congress the power to regulate commerce among the several States.

It is to be observed that Congress has never undertaken to exercise this power in any manner inconsistent with the municipal ordinance under consideration, and there are several cases in which the court has asserted the right of the State to legislate, in the absence of legislation by Congress, upon subjects over which the Constitution has clothed that body with legislative authority.‡

But it is not necessary to resort to the principles maintained in these cases for the decision of the case now before us. It comes directly within the rules laid down in the case relating to the tax upon the gross receipts of railroads. In that case we said: "It is not everything that affects commerce that amounts to a regulation of it within the meaning of the Constitution." We admitted that "the ultimate effect" of the tax on the gross receipts might "be to increase the cost of transportation," but we held that the right to tax gross receipts, though derived in part from interstate transportation, was within the general "authority of the States to tax persons, property, business, or occupations within their limits."

The license tax in the present case was upon a business carried on within the city of Mobile. The business licensed included transportation beyond the limits of the State, or rather the making of contracts, within the State, for such

---

* 12 Wallace, 423.                                    † 8 Id. 123.

‡ License Cases, 5 Howard, 504; Willson *v*. Blackbird Creek Marsh Co., 2 Peters, 245; Cooley *v*. Board of Wardens, 12 Howard, 315.

transportation beyond it.   It was with reference to this fea-
ture of the business that the tax was, in part, imposed; but
it was no more a tax upon interstate commerce than a gen-
eral tax on drayage would be because the licensed drayman
might sometimes be employed in hauling goods to vessels
to be transported beyond the limits of the State.

We think it would be going too far so to narrow the
limits of State taxation.

The judgment of the Supreme Court of Alabama is, there-
fore

AFFIRMED.