# THE CUMBERLAND AND PENNSYLNANIA RAIL-ROAD CO. *vs.* THE STATE OF MARYLAND.

*State Tax on Gross Receipts of Railroad Companies Partly Within*
*, this State—Constitutional Law—Inter-state Commerce—Interest on*
*Unpaid Taxes.*

The Legislature has the power to impose a franchise tax upon the gross
   receipts of railroad companies chartered by the State, the amount of
   the tax being measured by the number of miles of the road in this State,
   and such a tax is not a regulation of interstate commerce within the
   meaning of the Constitution of the United States.

Under the Acts of 1890, ch. 559 and 1896, ch. 120, an annual State tax is
   levied upon the gross receipts of all railroad companies chartered by
   the State and doing business therein, and it is provided that if any such
   company has part of its road in this State and part thereof in another
   State, such company shall return a statement of its gross receipts over
   its whole line of road, together with a statement of the whole length of
   its line, and the length of its line in this State, and such company shall

pay to the State at the prescribed rates upon such proportion of its gross earnings as the length of its line in this State bears to the whole length of its line.  *Held,*

1st.  That the tax so imposed is a franchise tax measured in amount by the extent of the business of the companies, and is not a tax on the goods transported or the tolls derived therefrom.

2nd.  That such tax is valid, and is not an interference with or a regulation of interstate commerce, so as to conflict with the exclusive right of Congress to regulate commerce among the several States.

Under the above-mentioned Act of 1890, the taxes are made due and payable on July 1st in each year and it is provided that if they are not paid within thirty days thereafter, the companies shall pay the additional sum of five per cent as a penalty.  *Held,* that the Legislature has the right to impose the penalty, and that in a suit to recover such taxes, interest is chargeable on the amount of the tax from August 1st in each year, and that no interest is chargeable on the five per cent penalty.

Appeal from the Circuit Court for Allegany County (BOYD, C. J., and SLOAN, J.)   At the trial the following prayers were offered :

*Plaintiff's Prayer.*—The Plaintiff prays the Court, to rule, as matter of law in this case, that under the pleadings and agreed statement of facts herein, the plaintiff is entitled to recover in this case the amount of the State taxes levied against the defendant by the Acts of Assembly of 1890 and 1896, for each of the years from 1891 to 1898, both inclusive, according to the computation of the same made by the Comptroller upon the defendant's returns of the gross receipts for each of the years preceding the 31st day of January in each of said years, as set out in said agreed statement, together with interest upon the taxes for each of said years, from the first day of August after the same were each so respectively levied, and also the penalty of five per cent (without interest) upon the whole amount of said taxes levied by said Acts of Assembly, for default in payment.  (*Granted.*)

*Defendant's First Prayer.*—The defendant prays the Court to rule, that the tax calculated and assessed by the State Tax Commissioner in each count of the declaration mentioned is a tax on the gross receipts of the defendant ; and that the plaintiff can recover only such portion of said tax as the amount of

gross receipts of the defendant derived from business done within the State of Maryland, and exclusive of its gross receipts derived from the business of interstate commerce, bears to the amount of its gross receipts taxed as aforesaid. (*Rejected.*)

*Defendant's Second Prayer.*—That the tax calculated and assessed by the State Tax Commissioner in each count of the declaration mentioned is a tax on the gross receipts of the defendant; and that in proportion to the extent that said gross receipts are derived from the business of interstate commerce said tax is invalid and the plaintiff cannot recover such portion thereof. (*Rejected.*)

*Defendant's Third Prayer.*—That the plaintiff can recover on each count of the declaration no greater sum as a tax than the tax levied by the Act of the Assembly on the gross receipts of the defendant exclusive of the gross receipts which were in fact directly paid to it for the business of interstate commerce carried on by it during the year in said count mentioned. (*Rejected.*)

*Defendant's Fourth Prayer.*—That the plaintiff cannot recover in this suit the penalties claimed in the several counts of the declaration. (*Rejected.*)

*Defendant's Fifth Prayer.*—That the plaintiff cannot recover any interest on account of the defendant's failure to pay the whole or any part of the taxes sued for. (*Rejected.*)

*Defendant's Sixth Prayer.*—The defendant, by its attorneys, prays the Court to say, as the law in this case, that under the pleadings and all the evidence as contained in the agreed statement of facts in this cause filed, that the plaintiff is only entitled to recover under the Acts of 1890 and 1896 of the State of Maryland in the declaration of the plaintiff mentioned, the taxes properly calculated according to the provisions of said Acts upon the several amounts received by the said defendant from the business done by the said defendant entirely within the State of Maryland for each of the years in the said plaintiff's declaration mentioned; and that the plaintiff is not entitled to recover any sum as taxes upon the several amounts received by the said defendant for the transportation and carriage of

passengers and freight, in transit, from points without the State
of Maryland to points within the State of Maryland, and from
points within the said State of Maryland to points without the
same, and particularly for the transportation of coal shipped
and delivered by the owners thereof to the defendant, in the
State of Maryland, destined for continuous transportation, and
so transported to market at points beyond the limits of the
State of Maryland, that is to say, to points in certain other
States of the United States of America, and the District of
Columbia and the Dominion of Canada and other foreign
countries. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, PEARCE and SCHMUCKER JJ.

*Hugh L. Bond, Jr.,* and *John Walter Lord* (with whom
were *Wm. F. Frick* and *Robert H. Gordon* on the brief), for
the appellant.

The *Gross Receipts Case*, 15 Wall. 284, has been overruled
by the Supreme Court, in the case of *Fargo* v. *Michigan*, 121
U. S. 230, and the case of *Philadelphia Steamship Company* v.
*Pennsylvania*, 122 U. S. 326, and the line of cases following
those to the present time. *Delaware, etc., Canal Co.* v.
*Comm.*, 17 Atl. 175, 37 A. & E. R. R. cases, 359, *Vermont
& Canada R. Co.* v. *Vermont Central R. Co.*, 63 Vt. 1.

In *Ratterman* v. *Western Union Telegraph Company*, 127
U. S. 411, it was held that a State tax imposed on the gross
receipts of a telegraph company derived *from all sources* was
invalid in proportion to the extent that the receipts were de-
rived from interstate commerce. In *Leloup* v. *Port of Mobile*,
127 U. S. 640, it was held that a general license tax on a tel-
egraph company, the business of which consisted in part of
interstate commerce, was unconstitutional. The Court in terms
overruled its previous decision in *Osborne* v. *Mobile*, 16 Wall.,
479, which was based in terms upon the authority of the *Gross
Receipts Tax case*, 15 Wall. 284. *Western Union Telegraph
Co.* v *Alabama*, 132 U. S. 472, was the case of a tax imposed

by the State of Alabama "on the gross amount of the receipts by any and every telegraph company derived from *the business done by it in this State.*" The fact that it was limited to business done in the State had no weight with the Court, the broad principle being laid down that neither messages nor the receipts arising from messages, from points within the State to points without or from points without the State to points within, can be taxed by the State, but a tax can be levied only upon messages carried and delivered exclusively within the State. "It is well settled that a State cannot lay a tax upon interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce or the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce and amounts to a regulation of it which belongs to Congress." *Pacific Express Company* v. *Siebert,* 142 U. S. 339.

The case of *Maine* v. *Grand Trunk Railway Company,* 142 U. S. 217, is not an anthority in the present case. And any doubt upon this point is removed by the fact that one month after the decision was rendered in that case, the majority and minority unanimously held that a State tax *levied upon the gross receipts* of certain corporations did not apply to the gross receipts of an express company derived from interstate commerce. 142 U. S. 339.

We submit that the decisions of the United States Supreme Court establish the following propositions which are conclusive in this case.

1. That no business which is essentially a part of commerce between the States can be taxed by a State: be it that of a drummer. *Robbins* v. *Shelby,* 120 U. S., 489; *McCall* v. *California,* 136 U. S. 104; *Brennan* v. *Titusville,* 153 U. S. 289; or a telegraph company. *Telegraph Co.* v. *Texas,* 105 U. S. 460; *Leloup* v. *Mobile,* 127 U. S. 640; *Ratterman* v. *Telegraph Co.,* 127 U. S. 411; *Western Union Tel. Co.* v. *Alabama,* 132 U. S. 472; or an express company. *Fargo* v. *Michigan,* 121 U. S. 230; *Pacific Express Co.* v. *Siebert,* 142 U. S. 339;

or a car company. *Pickard* v. *Pullman Sou. Car Co.*, 117 U. S. 34; or a steamship company. *Phila. & Sou. S. S. Co.* v. *Penna.*, 122 U. S. 326, or a bridge company. *Covington, &c., Bridge Co.* v. *Kentucky*, 154 U. S. 204; or a railroad company. *Case of State Freight Tax*, 15 Wall. 232; *Norfolk & Western R. R. Co.* v. *Penna.*, 136 U. S. 114.

2. That the state does not acquire the power to tax such business by reason of the fact that it is the exercise of a franchise derived from the State. *Case of State Freight Tax*, 15 Wall. 232; *Phila. & Sou. S. S. Co.* v. *Penna.*, 122 U. S. 326; *Fargo* v. *Michigan*, 121 U. S. 230.

3. That the business of "railroad companies whose roads are worked by steam power" is "commerce itself" and so far as their business is interstate, it is "interstate commerce itself." *Case of State Freight Tax*, 15 Wall. 232; *Railroad Co.* v. *Husen*, 95 U. S. 465; *Wabash, &c., Ry. Co.* v. *Illinois*, 118 U. S. 557, 574; *Norfolk & Western Ry. Co.* v. *Penna.*, 136 U. S. 114; *Telegraph Co.* v. *Texas*, 105 U. S. 460, 464.

4. That a tax levied on the gross receipts of any business is a tax on the business. *Fargo* v. *Michigan*, 121 U. S. 230; *Phila. & Sou. S. Co.* v. *Penna.*, 122 U. S. 326; *Ratterman* v. *W. U. Tel. Co.*, 127 U. S. 411; *W. U. Tel. Co.*, v. *Alabama*, 132 U. S. 472; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339.

5. The Acts of Maryland as construed by the lower Court do, in form and in fact, levy a tax on the receipts of a railroad company derived from interstate business. *Fargo* v. *Michigan*, 121 U. S. 230; *Phila. & Sou. S. Co.* v. *Penna.*, 122 U. S. 326, *Ratterman* v. *W. U. Tel. Co.* 127 U. S. 411; *W. U. Tel. Co.* v. *Alabama*, 132 U. S. 472; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339.

6. It follows that the Acts of Maryland as construed by the lower Court are invalid in so far as they seek to levy such a tax on the interstate business of the defendant. *State Freight Tax*, 15 Wall. 232; *Fargo* v. *Michigan*, 121 U. S. 230; *Phila. & Sou. S. Co.* v. *Penna.*, 122 U. S. 326; *Ratterman* v. *W. U. Tel. Co.*, 127 U. S. 411; *W. U. Tel. Co.* v. *Alabama*, 132 U. S. 472; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339.

*Benjamin A. Richmond* and *George R. Gaither* (with whom was *Isidor Rayner, Attorney-General*, on the brief), for the appellee.

1. The tax levied was a franchise tax, measured in amount by the income or business of the company. *State* v. *Phila. & Wil. Ry. Co.*, 45 Md. 379 ; *Pittsburg* v. *Backus*, 154 U. S. 433.

2. Under the Acts the annual amount of said tax is determined by a calculation to be based upon such proportion of the whole receipts of the company for the preceding year, as the mileage of its railroad in the State of Maryland bears to its whole mileage, and such method of arriving at such franchise tax is proper, legal and reasonable under both the law of Maryland and the decisions of the Supreme Court of the United States. *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305 ; *Pullman Co.* v. *Penna.* 141 U. S. 18 ; *Pittsburg* v. *Backus*, 154 U. S. 433.

The mileage basis of apportionment was also sustained in *West. U. Tel. Co.* v. *Atty-Gen.*, 125 U. S. 530 ; *Charlotte Ry. Co.* v. *Gibbes*, 142 U. S. 386 ; *Columbia Southern Ry. Co.* v. *Wright*, 151 U. S. 473. In fact, we contend that no one single legal proposition in relation to railroad taxation, is now so firmly established by decisions of the Supreme Court of the United States as the above. In every case in which the question of the regularity, propriety or legality of arriving at such a tax by the mileage proportion has been involved, the decision has been in favor of the legality and reasonableness of the method.

3. That such a franchise tax under said Acts, so regulated according to such proportionate part of such gross receipts, is not a tax laid upon interstate commerce, nor a tax upon appellant's gross receipts as such, but a mere franchise tax, regulated in amount by the receipts, and as such is not an interference with the exclusive right of Congress to regulate commerce among the States, etc., and is, therefore, not obnoxious to section 8 of Article 1 of the Constitution of the United States.

The *Maine case* and *Backus' case* were expressly referred to

and approved in *N. Y.* v. *Penna.,* 158 U. S. 436. See also *Adams Express Co.* v. *Indiana,* 165 U. S. 253; *American Refrigerator Co.* v. *Hall,* 174 U. S. 75.

A careful analysis of all the decisions in the Supreme Court upon this question we think will establish the two following propositions:

(*a.*) A State law imposing a franchise or other tax upon a railroad corporation, which in its terms and words directly refers to and lays a tax on receipts derived from fares and freights or tolls received from interstate commerce, and which in words and terms points out those particular fares and freights as the sources of such receipts is unconstitutional as an interference with interstate commerce.

(*b.*) A State law imposing a franchise tax on a corporation according to the amount of its gross receipts generally, and which does not in terms and words refer to such fares and freights or other sources of such income, is not a direct interference with interstate commerce in terms, even though, as a matter of fact, a large proportion of such receipts were derived from fares and freights received from interstate commerce.

Keeping always in view the interpretation put upon our statute by our Court of Appeals, and which was put upon an almost identical one by the Supreme Court, namely, that our statute imposes a franchise tax regulated in amount by the amount of the gross receipts for the preceding year, and is not a tax in terms upon any particular source of those receipts, and our case falls directly within and under the second of the above propositions.

PEARCE, J., delivered the opinion of the Court:

This is an appeal from a judgment rendered by the Circuit Court of Allegany County in favor of the State of Maryland for the sum of $76,992.73. The State sued to recover from the Cumberland aud Pennsylvania Railroad Company, certain taxes claimed to be due for the eight years from January 31st, 1890, to January 31st, 1898. These taxes for each of the six

years up to January 31st, 1896, were duly assessed under the provisions of sec. 1 of ch. 559, of the Acts of 1890, and those for the two ensuing years, under the provisions of sec. 146 of ch. 120, of the Acts of 1896, which repealed and re-enacted the Act of 1890. A plea of *nil debet* was filed by the defendant, upon which issue was joined, and the case was submitted to the Court without the intervention of a jury, upon an agreed statement of facts, the plaintiff offering one prayer which was granted, and the defendant offering six prayers, all of which were rejected; to which rulings the defendant excepted. These prayers will be fully set out by the reporter.

The Act of 1890 declared " a State tax of one *per centum* shall be and is hereby levied annually upon the gross receipts of all railroad companies worked by steam, incorporated by or under the authority of this State, and doing business therein. * * If any such railroad company has any part of its road in this State, and a part thereof in another State or States, such company shall return a statement of its gross receipts over its whole line of road, together with a statement of the whole length of its line in this State, and such company shall pay to the State at the said rates hereinbefore prescribed, upon such proportion of its gross earnings as the length of its line in this State bears to the whole length of its line."

The Act of 1896 increased the tax upon gross receipts of railroad companies worked by steam power, establishing a scale of rates graded according to the earnings per mile, and specifically declaring the tax to be a franchise tax, but leaving unchanged the apportionment according to the mileage within the State.

The agreed statement of facts sets out that part of the defendant's gross receipts upon which the taxes had been assessed by the State Tax Commissioner were derived from the business of interstate commerce; and what part from business exclusively within the State; also what amount of taxes for the period mentioned were claimed by the State upon the entire gross receipts of defendant, and what amount for the same period were admitted to be due by the defendant upon

the entire gross receipts upon business done exclusively within the State, and sets out the tender of this last amount by the defendant at the proper times, and its refusal by the plaintiff. It also showed that the defendant's road is operated in Maryland under a charter from the State of Maryland and in West Virginia under a charter from the State of Virginia; that the *termini* of its road are at the city of Cumberland, in Maryland, at the Pennsylvania State line, and at Piedmont, in West Virginia; that the whole length of its road is 32 65-100 miles, of which 32 44-100 are in Maryland, and 21-100 in West Virginia, and that it is chiefly a coal road forming a connecting link between the B. & O. R. system at Piedmont and the Pa. R. R. system at the State line of Pennsylvania, and that everything necessary to be done by defendant in order to avail itself of the defense made, had been duly done.

The single question thus presented for determination is whether the tax sued for is in part invalid, as being a regulation of commerce among the several States, and therefore in contravention of Art. 1, sec. 8 of the Constitution of the United States. This question, always important in principle, and serious in result as involving a possible restriction upon the sovereign power of taxation, essential to the States for the maintenance of their existence—an existence which has been declared "*indestructible*" by the States themselves—has, in recent years, assumed a larger importance, and graver aspect, by reason of the enormous increase of expenditures by the Federal government, involving correspondingly heavy Federal taxation upon the citizens of the several States; since, if the States are denied the power, in return for franchises granted by them to corporations of their creation, to require of them their just contribution to the cost of government, the deficiency must be supplied by constantly increasing exactions from their already heavily burdened citizens. The Supreme Court of the United States in 1872, recognized and declared the wrong of unduly narrowing the limits of State taxation, by its decision in *Osborne* v. *Mobile*, 16 Wall. 479, in which it sustained an ordinance of the city of Mobile requiring a license for any rail-

road or express company to transact in Mobile a business extending beyond the limits of the State of Alabama; CHIEF JUSTICE CHASE, saying: " *It is as important to leave the rightful powers of the State in respect to taxation, unimpaired, as it is to maintain the powers of the Federal government in their integrity,*" and this language was concurred in by JUSTICES FIELD, DAVIS, MILLER, BRADLEY and STRONG, who participated in many of the subsequent decisions of that Court involving the consideration of that clause of the Constitution.

Standing then upon the just and impregnable principle announced in the language which we have reproduced, we will consider the question in the light of all the authority which can be derived from the decisions of the Supreme Court upon statutes of similar form and design to that before us.    Unless the decision in the case of *The State Tax on Railway Gross Receipts*, 15 Wall. 284, is to be disregarded, it must be accepted as requiring the affirmance of the judgment here assailed, and the appellant's counsel, conceding this, have directed all their energy to the effort to show that that decision, if not literally overruled, has been so criticised and discredited by later decisions, as to be shorn of all authority, and to warrant, if not to require, the State Courts to refuse longer to follow it.    The circumstances under which that decision was pronounced are so noteworthy as to justify extended reference to them here.    At the December term, 1872, of the Supreme Court of the United States, two cases were argued, in each of which the Reading Railroad Company was appellant, and the State of Pennsylvania was appellee.    In each of these cases the Supreme Court of Pennsylvania had affirmed the validity of a statute of the State, which the plaintiff in error alleged to be in contravention of that clause of Art. 1, sec. 8 of the Constitution of the United States which is here drawn in question,    In the first of these cases, the statute under consideration was the Act of 1864, which required every transportation company doing business in the State to make quarterly returns of the number of tons of freight carried over its road, and imposed a tax of from two to five cents upon every ton of freight

so carried, according to a certain classification of freight.    In the latter case, the statute in question was the Act of 1866, which required all transportation companies, incorporated under the laws of the State, to make semi-annual returns of their gross receipts, and imposed a tax of three-fourths of one *per centum* upon such gross receipts.    In the former case the statute was held repugnant to the clause of the Constitution mentioned.    In the latter, it was held not to be so repugnant. The former is officially reported under the title of " Case of the State Freight Tax," and the latter under the title of " State Tax on Railway Gross Receipts "; thus emphasizing the discrimination drawn by the Court in laying down the principles decided in the respective cases, and embodying these principles so to speak, in the titles under which they were directed to be reported.    They were argued in immediate succession, before the same judges, and by the same counsel.    The former case was the first decided, the decision in the latter following without haste, but within a short time thereafter.    All the conditions therefore were favorable to careful consideration, and to calm and impartial judgment, and these decisions must of necessity commend themselves as the deliberate and fixed conclusions of a great tribunal upon great principles, involving great interests ; binding upon all inferior tribunals, and entitled to every presumption of soundness and stability when assailed in that tribunal itself, by those whose interest it is to overthrow or weaken them, or when questioned by judges, however eminent, whose individual views are not in accord with the established doctrine.

In the *Case of the State Freight Tax*, the Court said : "The question calls upon us to trace the line, always difficult to be traced between the limits of State sovereignty in imposing taxation, and the power and duty of the Federal government to protect and regulate interstate commerce;" and after declaring that the constitutionality of a State tax is to be determined, not by the form or agency through which it is to be collected, but by the subject upon which the burden is laid, asked, "Upon what is the tax imposed to be considered as laid ?

Where does the substantial burden rest? Very plainly it was not intended to be, nor is it in fact a tax upon the franchise of the carrying companies, or upon their property, or upon their business measured by the number of tons of freight carried. On the contrary, it is expressly laid *upon the freight carried,* and the tax is not proportioned to the business done in transportation. The transportation of freight is a constituent of commerce itself. * * * And a tax upon freight transported from State to State is a regulation of interstate transportation and therefore a regulation of commerce between the States, and the conclusion is inevitable that it is in conflict with the Constitution of the United States. * * * * But while holding this, we fully recognize the power of each State to tax at its own discretion, its own internal commerce, *and the franchises, property, or business of its own corporations.*"

Having thus plainly and conclusively traced the line between the power of the State to impose, and of the Federal government to prohibit taxation, and having asserted the power and duty of the Federal government in the case before it, the Court turned to the consideration of the case of the State tax on railway gross receipts, and proceeded to inquire whether such a tax is a tax upon commerce, so far as that commerce consists in moving goods or passengers across State lines, using, in the course of the opinion delivered, this lucid and convincing reasoning: " No doubt every tax upon personal property or upon occupations, business or franchises, affects more or less the subjects and the operations of commerce, yet it is not everything that affects commerce, that amounts to a regulation of it, within the meaning of the Constitution. We think it may be safely asserted that the States have authority to tax the estate, real and personal, of all their corporations, including carrying companies, precisely as they may tax similar property when belonging to natural persons, and to the same extent. We think also that such taxation may be laid upon a valuation, or may be an excise, and that in exacting an excise tax from their corporations, the States are not obliged to impose a fixed sum upon the franchises, or upon the value of

them, but they may demand a graduated contribution, pro-
portioned either to the value of the privileges granted, or to
the extent of their exercise, or to the result of such exercise.
*No mode of effecting this, and no forms of expression which
have not a meaning beyond this, can be regarded as violating
the Constitution. A power to tax to this extent may be essential
to the healthy existence of the State governments, and the Fed-
eral Constitution ought not to be so construed as to impair, much
less destroy anything that is necessary to their efficient existence.*"
It was accordingly held that the act imposing the tax was not
in conflict with the Constitution of the United States, and the
decision was placed upon two distinct grounds: 1st. That such
a tax is laid upon a fund, which though in part derived from
freight earned, has lost its distinctive character, and has become
the property of the company, and has been incorporated with
the general mass of its property. The Court said upon this
point: There seems to be no stronger reason for denying the
power of a State to tax the fruits of such transportation after
they have become intermingled with the general property of the
carrier, than there is for denying her power to tax goods which
have been transported, after their original packages have been
broken, and after they have been mixed with the mass of per-
sonal property in the country. We think it may be safely
laid down that the gross receipts of railroad companies, after
they have reached the treasury of the carriers, though they
may have been derived in part from the transportation of
freight between States, have become subject to legitimate tax-
ation * * * It is not denied that net earnings of such cor-
porations are taxable by State authority without any inquiry
after their sources. * * * *And net earnings are a part of
gross earnings.*" The analogy here used, we think, has its
foundation in the true philosophy of constitutional law, and
the reasoning of the Court will endure the most searching
analysis.

The second ground upon which the decision was placed, is
upon the right of the States—which the Court declared to be
unquestioned—to tax the franchises of companies created by

them, saying : "It is not deniable that gross receipts may be a measure of proximate value, or if not, at least of the extent of enjoyment. If the tax be in fact laid upon the companies, the adoption of such a measure imposes no greater burden upon any freight, or business from which the receipts came, than would an equal tax laid upon a direct valuation of the franchise. In both cases, the necessity of higher charges to meet the exaction is the same."

To this decision, and to the wise and sound construction, and logical reasoning by which it is supported, JUSTICES MILLER, FIELD and HUNT, in vain opposed their adverse views, which, though often repeated elsewere, have never, in our judgment, been more forcibly expressed than in the dissenting opinion of JUSTICE MILLER in that case.

Since the decision in *State* v. *P. W. & B. R. R.*, 45 Md. 379, it cannot be questioned that the tax in the present case is a franchise tax, measured in amount by the extent of the business of the corporation, the Act of 1872, ch. 234, which was considered in that case, being identical in substance, and very nearly so in language, with the Act of 1890, ch. 559, and the Act of 1896, ch. 120, sec. 148, now under consideration. The Supreme Court of the United States has said in *Erie Railway* v. *Pa.* 158 U. S. 435–36, where the interstate commerce clause of the Constitution was invoked without success : "A construction or meaning, attributed to the terms of a State statute by the Courts of such State, will, of course, be adopted by this Court when called upon to decide questions arising under such legislation ;" and that Court must, therefore, if called on to review this decision, assume that this tax is a franchise tax, and upon that assumption, determine its constitutionality, in full view of its own numerous decisions upon that point, which may be summarized in the language of JUSTICE CLIFFORD in *Coite* v. *Society for Savings*, 6 Wall. 635, in which he says : "Nothing can be more certain in legal decisions than that the privileges and franchises of private corporations may be taxed by a State for the support of the State government." Unless, therefore, the decision in the State tax on railway

gross receipts can be shown to have been overruled—or shall be hereafter overruled on a review of this case—the judgment before us must stand.

The *Gross Tax Receipts Tax case* was approved in *Osborne* v. *Mobile, supra,* sustaining a license tax upon an express business carried on in Mobile, and including transportation beyond the limits of the State, CHIEF JUSTICE CHASE, saying : " It comes directly within the rule laid down in the case relating to the tax on the gross receipts of railroads, and is no more a tax upon interstate commerce than a general tax on drayage would be, because the licensed drayman might sometimes be employed in hauling goods to vessels to be transported beyond the limits of the State."

It was again approved in the case of the *Del. R. R. Tax,* 18 Wall. 232, where JUSTICE FIELD, dealing with a similar statute imposing a tax upon the net earnings of the railroad, said ; " The tax imposed by the Act in question, affects commerce among the states in just the same way, and in no other, that taxation of any kind necessarily increases the expense attendant upon the use or possession of the thing taxed, and a tax upon a corporation may be proportioned to the income received, as well as to the value of the franchise granted or the property possessed. The exercise of the authority which every State possesses to tax its corporations and all their property, real and personal, *aud their franchises,* and to graduate the tax upon the corporations according to their business and income, or the value of their property, when this is not done by discriminating against rights held in other States, *and the tax is not on imports, exports, or tonnage, or transportation to other States,* cannot be regarded as conflicting with any constitutional power of Congress." The *Gross Receipts case* has also been approved in numerous subsequent decisions of the Supreme Court of the United States to which reference here is unnecessary.

We shall not attempt to review all the cases cited by the appellant in support of its contention, but will refer briefly to a class of these cases which we think can be broadly dis-

criminated, before we take up the cases which it is contended have overruled the *Gross Receipts case.*

In *Tel. Co. v. Texas*, 105 U. S. 460, the precise question presented was whether the power of the State to tax the occupation of the Telegraph Co. could be exercised by placing a specific tax on each message sent out of the State, or sent by public officers on the business of the United States. An act of Congress to facilitate the erection of telegraph lines had authorized the use of the public domain, and the military and post roads and the crossing of navigable streams and waters of the United States for that purpose, and in return for these privileges, those who avail themselves of it are bound to give the United States precedence in the use of their lines for public business, *at rates to be fixed by the Postmaster-General*, thus constituting companies of that class, as to government business, government agencies, and this company had accepted the privileges and obligations of that Act. It was held that the tax laid could not be enforced, CHIEF JUSTICE WAITE saying as to the first point, that the tax was laid on the *message itself*, *the same tax on every message sent, and because it is sent without regard to the distance carried or the price charged* and the tax is in no respect proportioned to the business done. That case was, on that point, thus brought clearly within the principle and the letter of the ruling in the *State Freight Tax Case*, 15 Wall. *supra*. As to the government messages, the tax was also held invalid because a tax by the State on the means employed by the United States to execute its constitutional powers is void, upon the familiar principle decided in *McCulloh v. Md.*, 4 Wheat. 316. In *Leloup v. Port of Mobile*, 127 U. S. 640, the only tax involved was a license tax upon the West. Union Tel. Co. similar to the license tax in *Osborne v. Mobile*, 16 Wall. *supra*, the Tel. Co. having also accepted the privileges and obligations of the Act of Congress mentioned in *Tel. Co. v. Texas*, *supra*, and it was held that such a *license tax* was invalid, thus overruling as to ordinary interstate messages, *Osborne v. Mobile*. This overruling of that case must be accepted, but when the Court pro-

ceeded to declare that no State can lay a tax on the receipts derived from the subjects of transportation of commerce—that question being in no wise involved—its utterance formed no part of its binding or authoritative judgment.

In *Tel. Co.* v. *Alabama*, 132 U. S. 472, the statute of Alabama imposed a tax on the gross amounts of the receipts by any and all Telegraph Companies, derived from business done in that State. The company returned only its gross receipts from business wholly within the State, but subsequently, on demand, a further return of its interstate business was made and the tax was imposed upon the aggregate of both returns. It was held that the statute, thus construed was a regulation of commerce, and the tax unconstitutional. It must be noted, however, that in that case the statute made no provision for apportionment of all receipts according to the mileage within and without the State, whereas in *Tel. Co.* v. *Massachusetts*, 125 U. S. 530, a similar statute which did make such apportionment was held valid. In all these cases, we think, the distinction from the present case is too obvious to require further notice.

But the appellant contends that the *Gross Receipts case* in 15 Wall. has been overruled in *Fargo* v. *Michigan*, 121 U. S. 230, and in *Phil. and Southern Steamship Co.* v. *Pa.*, 122 U. S. 326, and we will now consider that contention. In the first of these cases, a statute of Michigan imposed a tax upon the gross receipts of all corporations " running cars over any railroads in the State." The defendant was a transportation company under the laws of the State of New York, and the case showed carried no freights between points within the State. JUSTICE MILLER in delivering the opinion, said, " The cases of the *State Freight Tax* and *State Tax on Railway Gross Receipts* present the points in the case before us, perhaps as clearly as any which have been before this Court;" and referring expressly to the *Gross Receipts case*, after stating without any expression of dissent what had there been decided, further said : " The distinction between that case, and the one we now have before us is very obvious, and is twofold : First. The corporation which was the subject of that taxation, was a Penn-

sylvania corporation, having the *situs* of its business within the
State' which created it and endowed it with its franchises.
Second. This tax was levied upon money in the treasury of the
corporation, upon property within the limits of the State and
which had become, like any other property or money, liable
to taxation by the State. The case before us has neither of
these qualities. The corporation upon which the tax is levied
is not a corporation of Michigan. The money received for
freight, probably never was within the State, being paid to the
company either at the beginning or end of its route, and cer-
tainly at the time the tax was levied, it was neither money nor
property of the corporation within the State of Michigan." We
are now considering, not the legal merits of that decision, but
whether it was designed to overrule the gross receipts decision.
It must be remembered that JUSTICE MILLER had dissented
from that judgment, and that he was noted for strength of
conviction and will, and it is not possible to conceive that he
would have then forborne expressly to overrule it, if such had
been the purpose of the Court for which he spoke.

In *Phil. and Southern Steamship Co.* v. *Pennsylvania,* 122
U. S. 326, it must be conceded that the *Gross Receipts case* was
questioned. The statute in that case imposed a tax upon the
gross receipts of the company, in express words, "*for tolls and
transportation,*" and this at once and effectually, as we think,
discriminates the cases since, in the *Gross Receipts case,* the tax
was laid upon *all* the receipts without any reference whatever
to interstate commerce or the subjects of that commerce,
while in the *Steamship case,* the tax is limited to the *specific
receipts derived from tolls and transportation.* That the Court
felt that this distinction was inherent in the cases, is made clear
by JUSTICE BRADLEY in the opening paragraph of the opinion,
when he says : " The tax was levied directly upon the receipts
derived by the company from its fares and freights for the
transportation of·persons and goods between different States.
*   *   *   *   The tax in the present case is laid upon the
gross receipts of transportation as such. They are taxed not
only because they are money, but because they were received

for transportation." He does add : "A review of the question convinces us that the first ground on which the decision in State tax on railway gross receipts was placed is not tenable, and if the decision stood upon that ground alone its authority might be fairly regarded as denied." But when the judge proceeded to consider the second ground upon which that decision was placed, namely, that the tax was upon the franchise granted to the corporation by the State, he does not even intimate that this was unsound, on the contrary he says that could not be affirmed in the case before the Court, because by the terms of the Act it was equally laid upon corporations of other States doing business in Pennsylvania. In this connection it may not be amiss to observe that only a short time before, the same justice, who delivered the opinion which we are now considering, in a dissenting opinion in the case of *Pac. Railway Co.* v. *Illinois*, 118 U. S. 593, treated the *Gross Receipts case* as still binding upon the Court and said : " We have omitted to cite a number of cases corroborating the view we have expressed. The case of State tax on railway gross receipts, 15 Wall. 284, is *weighted with* arguments and considerations in this direction, and we would also refer to *Osborne* v. *Mobile*, 16 Wall. 479," that being the same case which was by the same justice overruled in delivering the opinion of the Court a few years later, in *Leloup* v. *Mobile*, 127 U. S. 640. This leads us to recall the language of JUSTICE MILLER in *Fargo* v. *Michigan, supra,* where he says : " With reference to the utterances of this Court, until within a very short time past as to what constitutes commerce among the States, and also as to what enactments by the State Legislatures are in violation of the constitutional provision on that subject, it may be admitted that the Court has not always employed the same language, and that all of the judges of the Court who have written opinions for it, may not have meant precisely the same thing." In view of this candid declaration of the Supreme Court, we feel that the only tribunal which with justice to the parties concerned, can determine the decree of authority to be attributed to the *Railway Gross Receipts case*, often approved, and never as we think overruled, is the high tribunal from which it emanated.

It is only by confining inquiry to the precise facts in each case before the Supreme Court, that we can with fairness to that Court, and with due regard for the reputation of this Court, reach any proper conclusion as to just what was intended to be decided in each case, and in the review of the cases which we have here attempted, we have endeavored to state fairly and fully what we understand to be the controlling facts, and to make no forced or biased deductions therefrom. It is not to be denied that in these and other decisions of the Supreme Court, since the *Gross Receipts case*, 15 Wall., there is manifested a tendency to enlarge the authority of the Federal Government, and to curtail the taxing power of the State, when applied to questions, however remotely, affecting the subjects of interstate commerce ; but whatever may be thought of the decision in *Phila. Steamship Co.* v. *Pa.*, *supra*, or of the other cases relied on by the appellant as dethroning the authority of the *Gross Receipts case*, we regard the case of *Maine* v. *Grand Trunk Railway*, 142 U. S. 217, as necessarily reasserting its authority and conclusively establishing the validity of the tax now in question.

In that case, the statute of Maine required every corporation *operating* a railroad in the State, to pay " an annual excise tax for the privilege of exercising its franchise in the State," and provided that the annual gross *transportation* receipts should be divided by the number of miles operated, to ascertain the average gross receipts per mile ; and that when a railroad laid partly within and partly without the State as that railroad did, the gross receipts over the whole line, within *and without the State*, should be divided by the total number of miles operated, to obtain the average gross receipts per mile ; and the gross receipts within the State, should be determined by multiplying the general average per mile by the number of miles operated within the State. The Attorney-General of Maine in his reported argument, admirable alike for its clearness and condensation, declined to make any general review of the cases bearing upon the general question, and referred only to those closely in point, sustain-

ing his contention, viz.: *The Gross Receipts case,* 15 Wall. and the *Del. R. R. Tax,* 18 Wall., *supra,* and also the two cases there and here relied on as overthrowing the case in 15 Wall.; though it is singular that they do not seem to be relied on as in any way assailing the case in 18 Wall., and he apparently succeeded in demonstrating to the satisfaction of a majority of the Court, that 15th Wall. had not been over-ruled by the 121st or 122nd U. S., and that its authority was still acknowledged by the Court. That opinion was delivered in 1891 by JUSTICE FIELD, and fully sustained the contention of the State. The Court said, " The tax, for the collection of which this action is brought, is an excise tax upon the defendant corporation for the privilege of exercising its franchises within the State of Maine. It is so declared in the statute which imposes it, and that a tax of this character is within the power of a State to levy, there can be no question. The designation is used more frequently in this country in the sense of an impost for a license to exercise particular franchises than in any other sense. The privileges of exercising the franchise of a corporation within a State is generally one of value, and often of great value, and the subject of earnest contention. *It is natural, therefore, that the corporation should be made to bear some proportion of the burdens of government. As the granting of the privilege rests entirely in the discretion of the State, whether the corporation be of domestic or foreign origin, it may be conferred upon such conditions, whether pecuniary or otherwise, as the State in its judgment may deem most conducive to its interests or policy.* It may require the payment into its treasury each year of a specific sum, or may apportion the amount exacted according to the value of the business permitted, *as disclosed by its gains or receipts of the present or past years.* The character of the tax or its validity is not determined by the mode adopted in fixing its amount for any specific period or the times of its payment. The whole field of inquiry into the extent of revenue from sources at the command of the corporation is open to the consideration of the State in determining what may be justly

exacted for the privilege. The rule of apportioning the charge *to the receipts of the business* would seem to be eminently reasonable and likely to produce the most satisfactory results both to the State and the corporation taxed." * * * * " A resort to the receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the tax which should be levied ; and we are unable to perceive in that resort any interference with transportation, domestic or foreign, over the road of the railroad company, or any regulation of commerce which consists in such transportation." * * * " The case of *Phil. and South. Steamship Co.* v. *Pa.*, 122 U. S. 326, in no way conflicts with this decision, nor do the views we hold in this case in any way qualify or impair that decision."

If this is not a confirmation of the authority of 15th and 18th Wall. we are at a loss to understand the force of plain language, and we regard the *Maine case* as a clear indication on the part of the Court that the extreme limit of expansion of Federal authority in that direction, had been reached in the *Phil. Steamship case* and as a further indication that they meant to say in the *Gross Receipts case*, what they said in the *Maine case*, regardless of any apparent intimations to the contrary in the intervening period. They could not logically sustain the Maine statute while upholding the *Steamship case*, without recognizing the distinction between that case and those in 15th and 18th Wall. which we have already drawn in the discussion of those cases. But if we should believe with JUSTICE BRADLEY, in his dissenting opinion in the *Maine case*, that it overrules the *Steamship case*, then, there is an end of all argument, and we rest securely upon the *Gross Receipts case*. The *Maine case* is the latest upon the point, and its principles have been approved by the Supreme Court in numerous subsequent decisions, notably in *Erie R. R.* v. *Pa.*, 158 U. S. 440, and its exact doctrine reannounced in *Horn Silver Mining Co.* v. *N. Y.*, 143 U. S. 205, and *Adams Express Co.* v. *Ohio*, 165 U. S. 220.

If in the *Maine case*, the Court, in response to the argument

of the State based confessedly upon the continued authority of the *Gross Receipts case* and the *Del. R. R. Tax case*, as announcing the same doctrine, had chosen plainly to over-rule those cases, or without saying in plain words how much authority they should continue to have, had struck down the Maine statute ; in one case it *would* have been, and in the other it possibly *might* have been, our duty to follow its action in that case, though some of our own decisions might still be form-ally in the way. But understanding the *Maine case* as we do, and being profoundly impressed with the absolute soundness of the principles announced in the *Gross Receipts case*, and approved in the *Maine case*, we are bound, in duty to the State, to uphold the tax in question, leaving it to the Supreme Court to say, if invoked, whether we have misinterpreted their meaning.

The legality and propriety of the mileage method of measuring the value of a franchise tax, otherwise valid, has been so repeatedly declared, and so emphatically stated in the *Maine case*, that we shall not refer to any other authority.

Under secs. 6 and 7 of ch. 559 of 1890, which regulate the proceedings for recovery of all these taxes, they are due and payable July 1st in each year, and if not paid within thirty days thereafter the corporation is to forfeit and pay to the State an additional amount of five per cent, as penalty or damages, to be added to such taxes so due and unpaid ; and if judgment is rendered for the State in any suit to recover such taxes, judgment is to be entered without stay for the amount of taxes so due, and the five per cent additional, as damages, with interest and costs. This it was clearly within the power of the Legislature to provide. We think the interest was cor-rectly charged from the first of August only, as suit was only authorized after that time, and that no interest is allowable on the five per cent penalty or damages. It follows from what we have said, that the plaintiff's prayer was properly granted, and the defendant's six prayers were properly rejected—and the judgment will therefore be affirmed.

*Judgment affirmed with costs above and below.*

(Decided February 20th, 1901.)