# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 24, 1911.

NORFOLK AND WESTERN RAILWAY COMPANY, PLAINTIFF,

VS.

MURRAY VANDIVER, TREASURER OF THE STATE OF MARYLAND, WILLIAM B. CLAGGETT, COMPTROLLER OF THE STATE OF MARYLAND, BUCHANAN SCHLEY, TAX COMMISSIONER OF THE STATE OF MARYLAND, DEFENDANTS.

*Theodore W. Reath* and *Frank P. Clark* for plaintiff.

*Isaac Lobe Straus* for defendants.

STUMP, J.—

The questions involved arise upon the defendants' demurrer to the plaintiff's bill as amended.

The plaintiff's system of railroads runs or extends through and into the States of Virginia, North Carolina, West Virginia, Kentucky, Ohio and Maryland. Its main line extends from Norfolk in a general westerly direction to termini at Cincinnati and Columbus.

That part of the system which is in Maryland, and the manner of the assessment of which the tax authorities of this State has given rise to this cause, forms a portion of the railroad extending from Hagerstown, Maryland, to Roanoke, Virginia. The road between these two points, Hagerstown and Roanoke, was owned by the Shenandoah Valley Railway Company and by it operated until its road and franchises were foreclosed and sold to the Norfolk & Western Railway Company and the road is now operated by said plaintiff as a part of its system, and by it called or designated as the Shenandoah Division of the Norfolk & Western Railway Company. The plaintiff owns all the capital stock of the Shenandoah Valley Railway Company, and this latter company has never been dissolved and regularly elects its officers and maintains its organization and its receipts, accounts and earnings are kept separate and so reported every year to the Virginia authorities under a law of that State.

This Shenandoah Valley Railway Company or this Shenandoah Division of the plaintiff's railroad extends a total of 244.16 miles from Hagerstown to Roanoke, of which 15.58 miles are in Maryland and the remaining miles in West Virginia and Virginia. The whole system has nearly 2,000 miles, and the Shenandoah Division of 244 miles, is single track as contrasted with double track on the plaintiff's main line which does not touch the State of Maryland. The State's Tax Commissioner acting as advised, he had authority to act under the Maryland Statute (Laws of Maryland, 1906, Chapter 712,) directing a franchise tax based on gross receipts of railroad companies in, or partly in this State, assessed the 15.58 miles of railroad above referred to, and in Maryland, by taking the total gross receipts of the whole Norfolk & Western Railway System as an element in reaching the value of each mile in Maryland, instead of taking the total gross receipts of merely the Shenandoah Division or Shenandoah Valley Railway between Hagerstown, Maryland, and Roanoke, Virginia, as a basis under the statute for estimation of the value of each mile in Maryland. Had the road between Hagerstown, Maryland, and Roanoke, Virginia, been owned and operated independently of other roads, and not physically or otherwise connected with other roads, then under the authority of the Maine case (Maine vs. Grand Trunk Railway Company, 142 U. S. 217), and of the Cumberland and Pennsylvania Railroad Company vs. the State of Maryland, 92 Md. 668, no room would have been left for doubt of the authority of the State of Maryland's officials to take under the said Maryland statute as an element in assessing the Maryland mileage, the gross receipts of the whole road from Hagerstown to Roanoke, the Shenandoah Valley Railway, in all three States through which it extended, Maryland, Virginia and West Virginia. Such under the authorities would in this court's opinion have been merely the use of the gross receipts as a means of assisting in or fixing the fair valuation for taxation of each mile in Maryland and not a regulation of interstate commerce prohibited by the Constitution of the United States.

The question here is, however, whether this latter method should not have been followed in this instance under a proper construction of the State statute in the light of the subsisting authority upon the subject and from the standpoint of equity as well, or the prevention of hardship.

The State of Maryland has not fixed any definite sum to be levied as a franchise tax, nor has it vested its Tax Commissioner with authority so to do. It has full authority to tax all prop-

erty within its jurisdiction, but not beyond its borders.

As to railroad companies within or partly within its borders, it has by the aforesaid statute, given to its taxing or assessing authorities the guide that must be followed, and the facts of this case must be considered to discover whether the Tax Commissioner of Maryland has acted within the scope of the statute, and without violation of the constitutional provision against the regulation of commerce between the States. The language of Mr. Justice Holmes in the Texas case (210 U. S. 227) is applicable. He says in part: "* * * By whatever name the exaction may be called, if it amounts to more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution." * * * "The question is whether this is such a tax. It appears sufficiently, perhaps, from what has been said, that we are to look for a practical rather than a logical or philosophical distinction. The State must be allowed to tax the property, and to tax it at its actual value as a going concern. On the other hand, the State can not tax the actual business. The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line can be drawn by taking the whole scheme of taxation into account. That must be done by this court as best it can. Neither the State courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect. If it bear upon commerce among the States so directly as to amount to a regulation in a relatively immediate way, it will not be saved by name or form * * *."

Section 164 of the Maryland Act provides that a franchise tax shall be annually levied upon the gross receipts of all railroad companies whose roads are worked by steam power and during business in this State. And that if any such railroad company has part of its road in this State, and thereof in an-

other State or States, such company shall return a statement of its gross receipts over its whole line of road together with a statement of the whole length of its line in this State, and such company shall pay to the State at the rates before specified upon such proportion of its gross earnings as the length of its line in this State bears to the whole length of its line so that the proportion of the said gross earnings of the said companies accruing from their business within this State may be accurately ascertained.

The State Tax Commissioner, as before stated, demanded of the plaintiff a statement of its gross receipts over its whole system and refused to accept the preferred statement of gross receipts over its Shenandoah Valley Division, between Hagerstown and Roanoke, where said division has its physical connection with the plaintiff's main line. This statute must be construed in the manner conforming in each case as near as may be in a practical way to the general plan or scope of taxation provided, and so as not to conflict with the rules against regulating interstate commerce. The object is to place a fair valuation for taxation upon property or franchise within the State without in effect levying a toll upon earnings or property beyond the jurisdiction, and so to act under the guidance of the statute in each particular case as to accurately ascertain the proportion of the said gross earnings accruing from the company's business within this State.

This statute is the same under which arose the questions in the Cumberland and Pennsylvania case in 92 Md., already referred to and reference to the facts therein discloses a striking contrast with the facts in this case.

In that case the Cumberland and Pennsylvania Railroad Company from which the statement, as a basis of taxation in Maryland was demanded and upheld, of its total gross receipts from its whole road in the States of Maryland and West Virginia, was 32.65 miles long with 32.44 thereof in Maryland and 21 miles in West Virginia.

Furthermore, and more important, this road formed by a connecting link between the Baltimore and Ohio system at Piedmont and the Pennsylvania Railroad system at the State line. This Cumberland and Pennsylvania Road

was operated and controlled not only by one system but by two systems, and yet the gross receipts total of the whole Baltimore and Ohio and Pennsylvania systems were not demanded or used in placing a valuation upon the 32.44 miles of road in Maryland, and such a use or demand would have given probably very different results, and have a different case.

The same was true of the Maine case, where the gross earnings under a similar State of Maine statute were taken on a branch of the Grand Trunk System. The Shenandoah Division of the Norfolk & Western System should be under the facts of this case, in the court's opinion, the whole line referred to in the statute.

To demand the gross receipts of the whole system when the Shenandoah Division is a branch off the main line, and earning actually a small fraction per mile of the earnings of the system defeats the object of the statute and places a burden upon interstate commerce, and hence the demurrer will be overruled.